ROBINSON *v.* FERGUSON
[No. 16,047. Filed October 18, 1939.]

R. W. *Armstrong*, for appellant.
*Craig & Craig*, for appellee.

DEVOSS, P. J.—Appellant filed her complaint for damages in one paragraph charging appellee with negligence in the handling of a needle, while injecting medicine into the jaw of appellant, in such a manner that he carelessly and negligently broke said needle and in allowing the same to remain in the left side of the lower jaw of appellant.

To this complaint the appellee filed an answer in general denial.

The cause was submitted to a jury for trial and at the conclusion of appellant's evidence, upon written motion of appellee the court instructed the jury to

find for appellee. Pursuant to said instruction the jury returned a verdict for appellee and the court rendered judgment thereon. Appellant, within the proper time, filed her motion for a new trial which was overruled by the court, and this appeal followed. The assignment of errors questions the action of the trial court in giving said peremptory instructions to the jury and in overruling appellant's motion for a new trial.

While there are eight reasons specified in the motion for a new trial, an analysis of the motion discloses that it is based upon the following available reasons: (1) the verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) error of court in the giving of the peremptory instruction to the jury.

It is noted that the complaint herein does not charge a lack of skill nor that appellee was incompetent in the practice of his profession, but charges negligence in two particulars, to wit: negligence in handling the needle in such a way as to break it off in the jaw of the plaintiff, and negligence in allowing the same to remain in the jaw.

Appellant in her brief states, ''The court took the case from the jury upon the theory that this kind of injury could only be proven by expert testimony.''

The question as to when and under what circumstances a trial court should direct a verdict has been well considered many times by this court, and the rule is correctly stated in the case of *Westfall* v. *Wait et al.* (1905), 165 Ind. 353, 358, 73 N. E. 1089, as follows: ''The trial court directed a verdict in favor of appellees, and this is assigned and urged upon us as error. If the evidence was of such a character as to make it clear to the court that a verdict if returned for appellant, upon whom the burden of

the issue rested, could not stand, then it became the duty of the court to direct a verdict for appellees, and there could be no error in so doing.''

As a general proposition the question of negligence is a matter for the jury to determine, but where there is a total lack of evidence to sustain the allegations of the complaint it is the duty of the trial court to so instruct the jury.

The evidence is uncontradicted, and summarized briefly is as follows: Appellant, on October 30, 1934, consulted appellee dentist relative to a tooth that was bothering her, and appellee recommended an extraction; preparatory to this, appellee, while injecting medicine into appellant's jaw, broke off therein the hypodermic needle which he was using, appellant being informed of the accident by appellee. After an unsuccessful attempt to remove the needle, appellee took appellant to a Boonville dentist who, after taking an X-ray, also failed to remove the needle. Appellee then next took appellant to a surgical dentist in Evansville; X-rays were again taken, but a removal of the needle was not effected. On January 11, 1935, appellee again took appellant to the same surgical dentist, but the attempted removal was again unsuccessful. Appellee on March 25, 1935, took appellant to a dental surgical specialist in Louisville, Kentucky, who took X-rays, but was unable to remove the needle after two separate attempts.

Appellant claims that she has had pains, a nervous condition, spots before her eyes, and poor health as a result of the accident; that her weight has fallen from one hundred and ninety pounds to one hundred and forty pounds; and that she has been unable to do her housework.

One physician testified that appellant's mouth was swollen, that it was possible for the needle to reach

various organs, and that appellant's pain would not subside if the needle was still there. Another physician deposed that he had examined the appellant in the fall of 1936 and had found her suffering from nervousness, neuralgia, and a numbness of the face; that the needle in her jaw was the first or exciting cause of her condition; and that appellant was permanently injured. Appellant testified that she had had gall bladder trouble.

The surgical dentist deposed that dentists and dental surgeons used needles in their practice for the purpose of inducing local anaesthetic; that the needle in appellant's jaw was pointed toward the ear, and had not moved; that the needle was not the cause of appellant's condition; and that it was unlikely that various effects might be presented on the appellant by the needle working itself into different places in the body.

The court sustained appellee's motion for a directed verdict, and peremptorily directed the jury to find for the defendant. The court then sustained the appellee's motion for judgment on the verdict.

There are two specific allegations of negligence involved herein: (1) negligence of appellee in breaking off the needle in the jaw of appellant; (2) negligence of appellee in allowing the needle to remain in the jaw of appellant. Evidence was introduced for the purpose of sustaining each of these allegations. Approaching the two questions involved inversely, we find that immediately after the needle broke in the jaw of appellant, appellee attempted to remove it; but being unable to do so, he informed appellant of the circumstance and told her that he would have to take her to Boonville, which he did. At Boonville an X-ray was made and the needle located, and the appellee together with Dr. Traylor attempted to remove the needle but failed. Appellee then took appel-

lant to a surgical dentist at Evansville where a further attempt was made to remove the needle but was a failure. Thereafter appellee accompanied appellant to Louisville, Kentucky, where a dental surgeon was consulted, and a further operation was had for the purpose of removing the needle which was also a failure. On the next day a further operation ·was had by Dr. Hume in the presence of appellee, the former stating that he didn't know whether the needle was in or out but that he had taken an X-ray and didn't see it any more and would call it out. The efforts to remove the needle covered a period from October 30, 1934, to March 26, 1935.

Appellant in her brief fails to point out anything appellee did or omitted to do, after the needle was broken off in her jaw, that indicated negligence or lack of care. In fact the evidence introduced by her would indicate that the conduct of appellee, after the needle was broken off in her jaw was exemplary. He not only advised her as to the true condition but attempted in every way possible to have the needle removed. We do not think the evidence shows absence of care, or negligence at that time; neither can we indulge in the inference, in the absence of testimony to that effect.

In discussing the question of negligence of appellee in the breaking of the needle, appellant fails to point out any specific act of negligence of appellee. There is evidence relative to the condition of appellant as a result of the broken needle, but whether or not the result of the actions of appellee would warrant an inference of negligence depends on whether the doctrine of *res ipsa loquitur* applies in this case.

In the case of *Edwards* v. *Uland* (1923), 193 Ind. 376, 381, 140 N. E. 546, the court correctly states the law as follows: "A physician or surgeon is not an insurer, and does not bind himself to make a

correct diagnosis and effect a cure or to respond in damages. He is only bound to possess reasonable skill and to use ordinary care; and if he makes a mistake in his conclusion as to whether a sore place on the skin has its origin in the flesh or in the bone under the flesh, he is excused from liability if, possessing reasonable skill, he has used ordinary care in making an examination, and has honestly reached the mistaken conclusion by the use of such skill and care. In the absence of evidence of any lack of skill, or of any lack of care in making the examination and forming his judgment, mere proof that the diagnosis was wrong will not support a verdict for damages. Not having warranted a cure, if he has reasonable skill and learning and uses ordinary care, he is not liable for the consequences of an honest mistake of judgment.''

The same rule applies to dentists and dental surgeons as well as to physicians.

'' 'In actions for malpractice against a physician or surgeon, the main issue of the defendant's use of suitable professional skill is generally a topic calling for expert testimony only; also that the plaintiff in such an action often prefers to rest his case on the mere facts of his sufferings, and to rely on the jury's untutored sympathies, without attempting specifically to evidence the defendant's unskillfulness as to the cause of those sufferings. Here the courts have been obliged to insist on the dictate of simple logic; . . . . expert testimony on the main fact in issue must somewhere appear in the plaintiff's whole evidence; and for lack of it the court may rule, in its general power to pass upon the sufficiency of evidence, that there is not sufficient evidence to go to the jury,' or to sustain plaintiff's verdict.'' *Capolupo* v. *Wills* (1932), 116 Conn. 13, 17, 163 Atl. 454, 455.

In the case of *Smith* v. *McClung* (1931), 201 N. C. 648, 161 S. E. 91, the plaintiff alleged and offered evidence tending to show that on Sunday, November 25, 1928, he was suffering pain from a tooth; that he went to the office of defendant dentist and informed him that he wanted the tooth out at once. The defendant undertook to extract the tooth and inserted novacaine into the gum with a needle. In some way the point of the novocaine needle broke off in the gum. Defendant extracted the tooth and undertook to remove the needle; after some effort on the part of defendant, he, defendant, told plaintiff to come back to his office the following day. Plaintiff returned to the office of defendant the next day and defendant informed him for the first time that the point of the needle had been broken off in the gum and that he was unable to remove it on the former visit because he had no help in his office, but that if the plaintiff would have a seat in the dental chair he would remove the needle then without pain. This plaintiff refused to do, but went to another dentist who treated his mouth. Later the defendant called plaintiff and insisted that he be permitted to remove the needle. This plaintiff refused to do and the needle is still in plaintiff's jaw. The court, in passing upon the questions involved, said (p. 650) : "Does the principle of *res ipsa loquitur* apply when the point of a novocaine needle breaks off in the gum or jaw of a patient when the dentist is using the needle to insert novocaine preparatory to extracting a tooth?" The exact question is involved in the above case as in the case under consideration by this court.

After citing authorities the court further said (p. 652) : "In the case at bar, the defendant did not manufacture the needle which broke. There is nothing tending to indicate there was any defect in the needle, or

that, if any defect existed, the same could have been discovered by the most rigid inspection. There is no evidence that the needle was used in a careless or negligent manner or by an unskilled or incompetent dentist. Indeed, the dentist discovered the broken needle, and undertook to remove it with all facilities available to him at the time. . . . Therefore, to hold that the doctrine of *res ipsa loquitur* applies to the facts of this case is to all practical purposes to impose the liability of insurer upon a dentist, physician, or surgeon, and no court has ever gone that far. . . .''

In the case of *Hill* v. *Jackson* (1924), 218 Mo. App. 210, 265 S. W. 859, a case similar to the instant case, the court held that the doctrine of *res ipsa loquitur* did not apply, although the dentist dislocated the jaw in extracting a tooth.

In the instant cause, there is no evidence, either by lay witness or expert, that the conduct of appellee was negligent in inserting the needle into the jaw of appellant. There is no evidence by any witness that the conduct of appellee after the needle was broken was negligent or unskillful, and in the absence of evidence tending to prove those allegations of the complaint it is our opinion that this cause must fail.

The evidence discloses that dentists, in the practice of their profession, use hypodermic needles. It is not disclosed that the needle used in the instant case was defective or that it was not of the type commonly used by dentists nor was there any evidence that the needle was used in a careless or negligent manner or was not used according to the usual practice of skillful dentists engaged in the practice.

We do not mean to say that the doctrine of *res ipsa loquitur* would not apply when the facts warrant, but in this cause the facts do not warrant the application.

Judgment affirmed.
Bridwell, J., dissents.