FURI FARINELLI *v.* E. A. CAMPAGNA.

[No. 3-274A25.  Filed November 20, 1975.  Rehearing denied January 16, 1976.  Transfer denied July 8, 1976.]

*Harold Abrahamson, Kenneth D. Reed, Joseph P. Allegretti,* of Hammond, *James K. Whitaker,* of Hammond, for appellant.

*Lester Murphy, Jr., Murphy, McAtee, Murphy & Costanza,* of counsel, of East Chicago, for appellee.

GARRARD, J.—From the record it appears that appellant Farinelli was injured in an industrial accident on March 13, 1967. He was treated by the appellee, Dr. Campagna. On March 14, 1969, he commenced suit against Campagna for damages. The complaint alleged, in general terms, medical malpractice.

On September 12, 1973, the trial court dismissed the action in response to Campagna's motion. This motion asserted lack of prosecution, failure to comply with discovery requests, and failure to comply with an order entered by the trial court at the close of an aborted pre-trial conference.

The propriety of that dismissal is the issue on appeal.

Before turning to the specific details of the case, we think it worthwhile to examine the law applicable to such dismissals. Indiana decisions have long affirmed the ability of a trial court to dismiss a pending action for want of prosecution. *See, e.g., Cabinet Makers Union* v. *City of Indianapolis* (1896), 145 Ind. 671, 44 N.E. 757; *Rogers* v. *Youngblood* (1948), 226 Ind. 165, 78 N.E.2d 663; *Swain* v. *City of Princeton* (1970), 147 Ind. App. 174, 259 N.E.2d 440.

The basis for such authority arises from the administrative discretion vested in a trial court in the conduct of its business. *Rogers, supra.* As the United States Supreme Court observed in *Link* v. *Wabash R. Co.* (1962), 370 U.S. 626, 629, 630:

"The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the [courts]."

The exercise of such administrative power is not a matter of massaging the ego of either trial or appellate judges who may harbor a penchant for orderliness nor is it intended to display the quantum of power they possess over the affairs brought before them.

Obviously, where the court's time is scheduled for conference, hearing or trial, last-moment cancellations will rarely permit the substitution of other matters involving the presence of parties or opposing counsel.

The major function to be served is perhaps more subtle.

Lawyers are, and hopefully will always remain, a reflection of the humanity around them. From such humanity comes the perception through which the common law grows and flourishes. Yet that perception is attended by the companion traits of procrastination and the yielding of time to other more current or pressing matters. In addition, human nature dictates that the farther a matter is pushed toward the periphery of our consciousness, the less capable and willing we become to disturb its state of repose. The result is often well-meaning injustice. Witnesses disappear or fail of memory. Litigants fail to secure a disposition of their cause based upon its true merits or lack of merit. Distrust of the bench and bar is fostered. It is recognition of the essential humanity in these faults that provides the primary justification for exercise of the court's administrative control. The purpose is to promote justice by recognition of the rules and discipline necessary to operate in the arena of the trial system. It is to provide clear and advance understanding for counsel so that the parties, the court and society may place their confidence in a system for solving disputes in a just, speedy and inexpensive manner. The purpose is not the punishment of litigants for the inattention of counsel.

That the individual litigant may thus be deprived of his day in court sometimes results. And yet as stated by Mr. Justice Harlan, writing for the majority in *Link:*

> "There is certainly no [cognizable] merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . ." 370 U.S. 633, 634.

The ever-increasing reliance placed upon our court system to solve disputes coupled with the concepts embodied in our "new" rules of civil procedure have necessarily brought us to the juncture where judicious exercise of the trial court's administrative powers may be essential to preserve any semblance of effective operation of the litigative system.

Our procedural rules are a response to the social demand that the system operate more with the view to determinations upon factual merits. Pleading traps and trial by ambush are eschewed. As a necessary adjunct, pre-trial discovery through interrogatories, depositions, production of documents, requests for admissions and stipulations has grown as an invaluable, if not indispensable, part of the trial technique. At the heart of the system, however, is the concept of the pre-trial conference provided by Indiana Rules of Procedure, Trial Rule 16. It is here that the course of trial is charted in order that the trial itself may focus upon the truly disputed issues of fact and law in a forum where they may be fairly presented and fairly met.

Prior to the adoption of these rules, the vehicle by which a party might seek to invoke use of the court's administrative control was subject to question due to the general non-recognition of the motion to dismiss under our civil code. *See, Swain,*

*supra. See, also,* cases such as *State ex rel. Hurd* v. *Davis* (1949), 227 Ind. 93, 84 N.E.2d 181; *Cook* v. *Herring* (1959), 130 Ind. App. 72, 162 N.E.2d 108, where our courts denied the propriety of dismissing a case except for want of jurisdiction.[1]

It is unnecessary to address the question of whether those decisions were actually intended to negate the inherent power of a court in the area of administrative control. Clearly the power may be properly exercised under appropriate rules for civil procedure. *Link, supra; Swain, supra.*

Such provisions exist in our present rules. TR. 1 provides the general frame of reference in its specification that the rules "shall be construed to secure the just, speedy and inexpensive determination of every action."

TR. 41, concerning dismissal of actions, provides under subdivision (E) :

> " (E) Failure to prosecute civil actions or comply with rules. Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution."

Regarding the initial phrase of this subdivision of the rule, we acknowledge and adopt the comment of the civil code study commission :

---

1. The latter decisions appear to emanate from a literal application of language contained in *State ex rel. Hurd* v. *Davis, supra.* Several of the cases might be distinguished upon the basis that they are restricted to dismissals for other than reasons of administrative control. However, the *Hurd* doctrine was applied in *State ex rel. Terminix Co.* v. *Fulton Cir. Ct.* (1956), 235 Ind. 218, 132 N.E.2d 707 to affirm the propriety of a prior reinstatement of a case after it had been dismissed for lack of prosecution.

"Dismissal for failure of plaintiff to comply with these rules *or any order of court* will not change the existing Indiana law. . . . This section of the new rule will also encompass . . . the sections in Burns' Stat. § 2-901 (Repl. 1967) which allow the court to dismiss . . . for disobedience by the plaintiff of an order concerning the proceedings." (Our emphasis) *See, also,* 3 Harvey, Indiana Practice, § 41.5, at 218.

Rule TR. 37, which generally follows the federal rule, provides for sanctions upon the failure of a party to grant proper discovery.

TR. 37 (B) (4) provides:

"The court may enter total or partial judgment by default or dismissal with prejudice against a party who is responsible under subdivision (B) (2) of this rule if the court determines that the party's conduct *has or threatens* to so delay or obstruct the rights of the opposing party that any other relief would be inadequate." (Our emphasis)

Subdivision (B) (2) refers to unexcused conduct that is:

"(a) punishable for disobedience of a subpoena or order under subdivision (B) (1) of this rule; or

(b) in bad faith and abusively making or seeking a deposition, interrogatories, production of evidence, inspection, examination, request, question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules; or

(c) in bad faith and abusively resisting or obstructing a deposition, interrogatories, production of evidence, inspection, examination, request, question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules."

Subdivision (B) (1) referred to in (a) above provides:

"(1) The court may enforce the attendance of witnesses by attachment, and punish disobedience of a subpoena or *order issued or made under these discovery rules* as a contempt . . . ." (Our emphasis)

Thus, under TR. 37 (B) (4) the court may enter default judgment or dismissal with prejudice against a party who is in

violation of subdivision (B) (2) *if* the court determines that the conduct *has or threatens* to so delay or obstruct the rights of the other party that any other relief would be inadequate.

A distinction is to be noted in the (B) (2) conduct which will permit the sanction. Under TR. 37(B) (2) (c), if the party merely resists or obstructs the action *of another party* in attempted discovery, the court must find that the party was acting "in bad faith and abusively." However, where the other party has secured a court order directing the answer, subdivision (B) (1) incorporated through subdivision (B) (2) (a) requires merely that the court find the order was in fact violated,[2] and that the violation resulted from unexcused conduct for which the party was responsible. *Cf.* 3 Harvey, Indiana Practice, § 37.2, at 126.

Finally, we note that Rule TR. 16 (K) applicable to pre-trial conferences states:

> "(K) Sanctions: Failure to appear. If without just excuse or because of failure to give reasonable attention to the matter, no appearance is made on behalf of a party at a pre-trial conference, or if an attorney is grossly unprepared to participate in the conference, the court may order either one or both of the following:
>
> (1) the payment by the delinquent attorney or party of the reasonable expenses, including attorney's fees, to the aggrieved party;
>
> (2) take such other action as may be appropriate."

In this regard, we note that the precipitating factor which caused the court to enter the dismissal sustained by the Supreme Court in *Link, supra,* was the failure of counsel to appear for pre-trial conference.

Thus, Dean Harvey comments on TR. 16 (K) :

> " 'Such other action' may include dismissal of the action under Rule 41(E) if plaintiff is at fault or the entry of a

---

2. The provisions are consistent with the general tenor of Rules TR. 30, 31, 33, 34 and 36, which do not contemplate the primary necessity of court order to secure discovery.

default judgment against a defendant pursuant to Rule 55(A)." 2 Harvey, Indiana Practice, § 16.6, at 180. *See, also, Beshear* v. *Weinzapfel* (C.A. 7, 1973), 474 F.2d 127.

A plethora of federal cases have construed the companion federal rules as confirming the administrative power of the trial court to order dismissals. *See, e.g., Link, supra; Beshear* v. *Weinzapfel, supra; Hicks* v. *Bekins Moving & Storage Co.* (C.A. 9, 1940), 115 F.2d 406 (for failure to prosecute); *Diapulse Corp. of America* v. *Curtis Pub. Co.* (C.A. 2, 1967), 374 F.2d 442; *Marshall* v. *So. Farm Bur. Cas. Co.* (C.A. 5, 1965), 353 F.2d 737 (for failure to produce for inspection); *U.S.* v. *Cont'l Cas. Co.* (C.A. 4, 1962), 303 F.2d 91; *Weiss Noodle Co.* v. *Aprile* (C.A. 6, 1959), 272 F.2d 923 (for failure to answer interrogatories); *Package Machinery Co.* v. *Hayssen Mfg. Co.* (C.A. 7, 1959), 266 F.2d 56; *Dalrymple* v. *Pittsburgh Consolidation Coal Co.* (D.C. Pa. 1959), 24 F.R.D. 260 (for failure to comply with requirements for pre-trial conference).

We conclude that the Indiana rules were intended to and do vest similar authority in our trial courts.

Three more points must be borne in mind. All are incidents of the discretionary nature of the power.

First, the power of administrative control, especially when exercised in terms of dismissal or default of the action, should not be lightly indulged in. It is tempered by the underlying significance of TR. 1, and should not be utilized as a vehicle to deprive litigants of their day in court through the application of technicality.

Secondly (and in view of the competing reasons for granting or withholding such relief), it is entirely proper for the acting court, and the reviewing court, to consider the entire record of facts and circumstances surrounding the particular case when judging whether an administrative control sanction should be imposed or sustained. *Link, supra; Diapulse, supra; Dalrymple, supra.*

Finally, when the court has exercised its discretion, our review on appeal is limited to ascertaining whether the course chosen constitutes a clear abuse of discretion. *Swain, supra; Alexander* v. *Pacific Maritime Assoc.* (C.A. 9, 1970), 434 F.2d 281.

In *Alexander* the court observed:

> "Although each case must depend upon its own facts, a good rule of thumb to be followed is that the exercise of discretion by the trial judge should not be disturbed unless there is 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' States Steamship Co. v. Philippine Air Lines Co., supra, 426 F.2d p. 804.' " 434 F.2d 281, 283.

With this background and standard of review, we turn to the present case.

As stated in the opening paragraph, this action was commenced March 14, 1969, alleging medical malpractice in merely general terms.

In April, Campagna, under the old rules of procedure, moved to have the complaint made more specific by setting forth the negligent acts or omissions complained of. This motion was subsequently overruled in November in view of the near onset of the new rules.

In January 1970, the case was venued to Starke County. In November of that year the court sustained a motion to dismiss filed by a hospital originally named as a second defendant.

The case then languished until March 1972, at which time Campagna served interrogatories upon Farinelli and secured a court order that they be answered on or before April 17, 1972.

On May 11, 1972, Campagna moved the court to impose sanctions for Farinelli's failure to answer the interrogatories. The court ordered that the interrogatories be answered by May 22nd or sanctions would be imposed.

On May 23, 1972, Farinelli filed answers to the interrogatories. The case then lay dormant another year until May 25, 1973, when the court established a tentative trial date for September, set a pre-trial conference for July 27, and ordered the parties to conduct a pre-pretrial conference by July 1.

On May 31, Campagna again moved for sanctions for Farinelli's failure to comply with a request served a year before for the production of income tax returns and Farinelli's failure to fully answer Interrogatory No. 25 of the above-mentioned interrogatories. This interrogatory had sought to secure the names of any doctors who had told Farinelli that Campagna had been guilty of malpractice. It further asked the plaintiff to state what acts or conduct these doctors alleged constituted negligence. In answering the interrogatory, Farinelli had listed two names but had given no statement regarding the supposed acts of malpractice. The court ordered Farinelli to comply with both discovery requests by June 25. While Farinelli's response to this order did set forth several reasonably specific averments of negligence, it was not responsive to the interrogatory. It did not purport to attribute the statements to the doctors previously named in the answer.

It does not appear that the pre-pretrial conference was ever had. The pre-trial conference was conducted on August 6th. At the conclusion of the conference, the court ordered that by August 17th Farinelli was to specifically list the charges of negligence of which Campagna was accused. He was to list the names of any doctors he intended to call as witnesses at trial. He was generally to list the testimony he expected to elicit from such doctors.

On August 17th Farinelli responded to this order by letter addressed to Campagna stating various allegations of conduct on the part of Dr. Campagna and attaching thereto a photocopy of five pages from the yellow page section of the telephone directory listing the names of some three hundred nine physi-

sians. The letter contained the notation that hopefully plaintiff would be able to select witnesses from this list.

Campagna then again moved for sanctions alleging (1) failure to diligently prosecute the action; (2) failure to comply with discovery orders; and (3) failure to comply with the order entered at the pre-trial conference. After a three hour hearing, the court found that upon the hearing date, September 12, 1973, and only twelve days before the proposed trial date, Farinelli could not advise the defendant whether or not he would have medical witnesses or medical evidence in his case in chief. The court then sustained defendant's motion and ordered the action dismissed.

During the entire course of proceedings, Farinelli filed no objections to any of the requested discovery. He made no request for an enlargement of time within which to answer.

Farinelli urges that the trial court is without authority to dismiss an action for reasons of administrative control. As previously discussed, we disagree. He argues that TR. 41 (E) is limited in application to a violation of one of the rules of civil procedure. As previously stated, we again disagree. It applies as well to violations of orders of the court entered pursuant to the rules.

In the alternative, he argues that even if the court possesses the power to dismiss, it was improperly invoked in this case. To support this contention he advances two arguments. First, he points out that the rules require the disclosure of witnesses known to the party. He then argues that since he did not know who his medical witnesses would be, or if he would call any, dismissal was improper. (He argues that any failure of diligence to secure the witnesses should only admit to imposition of a lesser sanction.)

This argument is principally addressed to the TR. 16 aspect of the case and we consider it in that regard.

The purpose of the pre-trial conference is to consider:

"(1)  the simplification of the issues;

(2)  the necessity or desirability of amendments to the pleadings;

(3)  the possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(4)  a limitation of the number of expert witnesses;

(5)  an exchange of names of witnesses to be called during the trial and the general nature of their expected testimony;

(6)  such other matters as may aid in the disposition of the action."  TR. 16 (A).

TR. 16 (B) provides:

"Unless otherwise ordered by the court, the pre-trial conference shall not be called until after reasonable opportunity for the completion of discovery."

The opening phrase of this subdivision of the rule is to be read in conjunction with subdivision (H) which permits the court to adjourn the pre-trial conference from time to time or to order an additional conference. Thus, in exceptional circumstances the rule provides latitude for early pre-trial control. Ordinarily, however, opportunity to complete discovery should be afforded before the parties meet for the pre-trial conference.

TR. 16 (C) recognizes the pre-pretrial and directs furnishing to opposing counsel the names and addresses of witnesses then known. TR. 16 (G) and (I) make such disclosure a continuing obligation.

TR. 16 (D) specifies:

"Preparation for conference of attorneys and pre-trial. *Each attorney shall completely familiarize himself with all aspect of the case* in advance of the conference of attorneys and be prepared to enter into stipulations with reference to as many facts and issues and exhibits as possible."  (Our emphasis)

The obligation imposed by this provision, as well as the need for thoroughly drawn pre-trial orders, is apparent when one

considers the impact of the requirement of subdivision (J) that when entered, and unless thereafter modified, the pre-trial order *shall control* the subsequent course of action. *See, North Miami Con. S.D.* v. *State* (1973), 261 Ind. 17, 300 N.E.2d 59.

In *Package Machinery Co.* v. *Hayssen Mfg. Co., supra,* the complaint charged appropriation of plaintiff's trade secrets. The case was dismissed when at pre-trial conference (and despite preceding attempted discovery) the plaintiff failed to specify precisely what trade secrets it alleged had been taken. In affirming, the Seventh Circuit quoted with approval from the trial judge's opinion:

"The court was not required to stand by and permit plaintiff to rest on its general statements of claimed trade secrets and await the outcome of a long expensive trial to see what the alleged trade secrets were. * * Nor should the defendants have to wait until plaintiff puts in its case to see what it has to defend against.

Throughout the many motions concerning whether plaintiff has made a definite enough statement of its claimed trade secrets, counsel for the plaintiff has repeatedly retreated to the position that he need only state so much as to enable the defendants to plead. Suffice it to say that counsel seems unaware of Rule 16 and the purpose of pre-trial conferences to eliminate unnecessary lengthy trials." 266 F.2d 57.

Counsel, of course, was aware of the desirability, if not the necessity, of using medical witnesses to endeavor to establish alleged medical malpractice. *See, e.g.,* discussion in *Worster* v. *Caylor* (1953), 231 Ind. 625, 110 N.E.2d 337; *Robinson* v. *Ferguson* (1939), 107 Ind. App. 107, 22 N.E.2d 901. He contends that he might be able to prove his case without such testimony by utilizing the sworn testimony of Campagna given at Farinelli's Workmen's Compensation proceeding. That, however, is not the issue. Indeed Farinelli could have responded that he intended to call no medical witnesses. Instead he served upon Campagna as his response the five before-mentioned pages from the telephone directory.

It was not the function of the trial court to require the production of medical witnesses. It was the court's function under TR. 16 to require the disclosure of witnesses known to the parties, and it was the obligation of the parties to be prepared for that conference. No doubt there may be occasions where counsel may offer an acceptable excuse or justification for his inability to disclose all witnesses at the pre-trial. Here the court was concerned with prospective expert witnesses to be used in a plaintiff's case in chief. There was no showing that Farinelli had discovered such witnesses but was encountering difficulty in securing their evidence for trial. The record instead is susceptible to the inference that no definite effort to secure such witnesses had been made by August 6th.

Farinelli's second argument asserts that he should have been excused for non-preparation regarding the actions he claimed to constitute malpractice and the need for medical witnesses. The reason advanced is that he had always relied upon the transcription of compensation hearing testimony until shortly before the pre-trial conference. At that time defendant filed a motion for summary judgment supported by an affidavit executed by Campagna. Farinelli asserts that the affidavit is in partial conflict with Campagna's prior testimony and therefore until he could pin Campagna down, he could not be expected to specify his theories of malpractice.

This assertion again reflects a basic misconception of TR. 16 and the pre-trial concept. From the commencement of suit until the pre-trial conference, Farinelli had a period of almost fifty-three months within which he could have deposed Campagna and engaged in other discovery. Having totally failed to do so, he may not be heard to complain that the Campagna affidavit deprived him of the ability to determine the theory of his case.

Finally, we consider the severity of the sanction imposed by the court.

As previously noted, the action was commenced nearly four and one half years before the pretrial conference was held, and the defendant promptly sought a specification of the acts or omissions claimed to constitute malpractice on his part.

Some seventeen months before the pre-trial, Farinelli was served with interrogatories which attempted to discover these specific charges and what medical practitioners were to be called as witnesses. Despite two subsequent motions requesting sanctions, this discovery was not completed before pre-trial. The pre-trial conference apparently aborted, resulting in an order granting Farinelli two more weeks' time to comply with this discovery. Even after defendant's final motion to dismiss, Farinelli had four days before the hearing, in which he did nothing further to comply with the court's order.

Without the circumstances preceding the pre-trial, perhaps a different sanction would have sufficed. Another judge might deem it sufficient to preclude the calling of medical witnesses at the trial. Yet such a remedy would not meet the problem of Campagna's right to know what he was to defend against, nor would it preclude his submission to a long or expensive trial if there was in reality no substantial evidence of malpractice.

In the spirit of TR. 1, and tempering the policy favoring adherence to the rules with the reality of the work-a-day world, the judge might well have withheld sanctions or imposed a lesser sanction had Farinelli complied at or before the final hearing.

These are, however, matters of speculation. The court felt that under the total circumstances here presented, dismissal was necessary. It had previously warned Farinelli that failure to comply with the discovery orders would result in imposition of sanctions.

We cannot say there was a clear abuse of discretion in the court's determination to dismiss the action.

The dismissal is affirmed.

Staton, P.J., concurs in result; Hoffman, J., concurs.

NOTE.—Reported at 338 N.E.2d 299.