**OFFICE ENVIRONMENTS, INC., d/b/a McKelvey–Kell, Appellant–Plaintiff,**

v.

**LAKE STATES INSURANCE CO. and Harleysville Insurance Co., Appellees–Defendants.**

No. 49A02–0408–CV–720.

Court of Appeals of Indiana.

Aug. 29, 2005.

Lawrence M. Hansen, Hansen Law Firm, LLC, Fishers, IN, for Appellant.

Thomas Todd Reynolds, Lisa M. Lewis, Threlkeld, Reynolds, LLP, Indianapolis, IN, for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Office Environments, Inc. appeals the trial court's dismissal of its complaint against Lake States Insurance Company and Harleysville Insurance Company (collectively, "Lake States"). Pursuant to Trial Rule 41(E), the trial court dismissed the lawsuit with prejudice as a sanction for Office Environments' noncompliance with its order to mediate the case in accordance with local rules. Because we cannot say that the trial court abused its discretion by dismissing the action in light of Office Environments' dilatoriness and failure to follow the proper channels for being relieved from the order to mediate, we affirm.

### Facts and Procedural History

Following the collapse of its roof and consequent property damage and business interruption, Office Environments filed a claim with Lake States. A dispute arose regarding payment of the claim, and Office Environments filed a complaint alleging breach of contract and bad faith in Marion Superior Court in January 2001. The trial court set a jury trial for January 8, 2002, and, in accordance with Marion County Local Rule 16.3(C)(1),[1] ordered the parties to complete mediation of the case at least sixty days prior to the set trial date.

The parties mutually selected John Trimble as their mediator. Trimble agreed to serve as mediator, explained that his "usual procedure for handling mediations is similar to the procedures utilized by most mediators. My rate is $200 per hour, plus reasonable expenses to be split equally between the parties and pay-

---

1. Marion County Local Rule 16.3 governs Alternative Dispute Resolution. Subsection C delineates when mediation is mandatory, and one such instance is when the parties in a civil case have made a timely demand for a jury trial:

   *Civil Jury Trials.* All cases where a timely demand for jury trial is made, mediation pursuant to A.D.R. Rule 2 is mandatory.

   Mediation is to be completed sixty (60) days prior to trial, unless the mediation referral is vacated for good cause shown. Objections to mediation may be made within fifteen (15) days of the completion of the case management conference required by 16.1(A).

   Marion County Local R. 16.3(C)(1).

able within 30 days after the mediation," Appellant's App. p. 95, and began circulating calendars to schedule the mediation.

Six weeks after Trimble first circulated calendars, Office Environments' counsel, Ronald Frazier, had yet to return available mediation dates to Trimble, which prompted Trimble to send a reminder letter. Thereafter, Frazier sent a letter to Lake States' counsel, Thomas Reynolds, advising that he would be unavailable for mediation during January and February and, absent any objection, would be requesting that Trimble resubmit calendars for March, April, and May 2002.

In December 2001, Trimble sent March, April, and May calendars to both Frazier and Reynolds. Meanwhile, Office Environments filed a motion to continue the jury trial. The trial court granted the motion and reset the trial for June 11, 2002. After reviewing the calendars returned by counsel, Trimble scheduled the mediation for April 16, 2002; Frazier, however, asked that the mediation be rescheduled due to a conflict. Additionally, Office Environments filed another motion to continue the trial. The trial court granted the continuance and reset the trial for June 24, 2003.

Trimble rescheduled the mediation for May 3, 2002. Because the parties advised that they would not be ready for mediation in May, however, the May 3, 2002, mediation was cancelled, and Trimble sent calendars for July, August, and September. Frazier was slow to respond to Trimble's request for dates so Trimble sent a letter requesting a response from Frazier. Before both parties returned their calendars, Trimble's calendar for July and August filled. Thereafter, the parties scheduled the mediation for November 26, 2002.

On November 25, 2002, Frazier called Trimble to inform him that the mediation needed to be rescheduled. Trimble then circulated calendars for February, March, and April 2003. However, the parties informed Trimble that they would not be ready for mediation until September due to ongoing discovery issues; thus, in February 2003, Trimble circulated calendars for September, October, and November. Neither of the parties responded until after Trimble sent two separate reminder letters. The parties did, however, file a joint motion to continue the jury trial, which the trial court granted, resetting the trial for December 16, 2003.

After reviewing the calendars, Trimble scheduled the mediation for November 7, 2003. Trimble, however, developed a conflict, informed the parties of the need to reschedule, and submitted calendars for January, February, and March. The mediation was rescheduled for March 6, 2004. On November 26, 2003, Lake States filed a motion to continue the trial, which the trial court granted.[2]

In December 2003, Frazier moved to withdraw as Office Environments' counsel because Office Environments refused to provide an additional retainer once the initial retainer had been exhausted. The trial court granted the motion. Thereafter, Office Environments engaged Lawrence Hansen as its new counsel. Trimble sent Hansen a letter informing him that he had developed a conflict and had to reschedule the March 6, 2004, mediation. After consulting with the parties, Trimble rescheduled the mediation for April 8, 2004. Meanwhile, Hansen sent a letter to Trimble, which stated:

As you may be aware, I have substituted as counsel for the Plaintiff in this mat-

2. While the trial court granted the motion for continuance, it did not specify a new trial date. The case was dismissed before a new trial date was set.

ter. I was not involved in the selection of mediators or agreements to retain mediators in this matter. I wanted to provide you a courtesy notification that my offices will not be responsible for any mediation expenses in the event mediation is unsuccessful in this matter. I have advised my client that all expenses are his responsibility and I will not be acting as his agent or requesting an extension of credit from any mediator relative to this matter. If this is not acceptable, please advise so that we may act accordingly.

*Id.* at 155. Upon receiving this letter, Trimble requested that the parties each pay a retainer of $600 before the mediation. Office Environments refused to pay the retainer, and Trimble cancelled the mediation.

Lake States filed a motion to dismiss Office Environments' complaint with prejudice. In support of their motion, Lake States cited Office Environments' refusal to comply with the trial court's order that the case be mediated in accordance with local rules. Office Environments filed a response, and Lake States filed a reply to which it attached correspondence and court filings regarding the scheduling of the mediation. A hearing was held on Lake States' Motion to Dismiss during which Office Environments failed to provide any evidence that it was unable to pay Trimble's requested retainer. At the hearing, Office Environments requested that it be able to respond to Lake States' reply. The trial court denied this request. Additionally, the trial court granted Lake States' motion, and Office Environments filed a motion to correct errors, which was denied following a hearing. Office Environments now appeals.

### Discussion and Decision

■ Before we proceed with our substantive analysis of this case, we address Office Environments' contention that the trial court erred by not allowing it to file a response to Lakes States' reply on the motion to dismiss. In particular, Office Environments claims that because of the volume of attachments to the reply, the trial court should have given it an opportunity to respond. While the materials attached to Lake States' reply were voluminous, they consisted of correspondence and court filings that Office Environments was privy to. Moreover, the trial rules do not automatically allow a party to file a response to a reply. Thus, we cannot say that the trial court abused its discretion by denying Office Environments the opportunity to file a response to Lake States' reply to Office Environments' response to the motion to dismiss.

■ Turning now to the merits of the case, Office Environments argues that the trial court erred by dismissing its complaint pursuant to Indiana Trial Rule 41(E) for failing to comply with local rules regarding mediation. In particular, Office Environments argues that pursuant to A.D.R. Rule 2.10 the only sanction that the trial court had the authority to impose was the assessment of mediation costs and attorney fees. *See* Ind. Alternative Dispute Resolution Rule 2.10 ("Upon motion by either party and hearing, the court may impose sanctions against any attorney, or party representative who fails to comply with these mediation rules, limited to assessment of mediation costs and/or attorney fees relevant to the process."). Consequently, Office Environments claims that its complaint must be reinstated. Office Environments' argument misses the mark, however, because the trial court was not sanctioning Office Environments for its failure to comply with the mediation rules.

Here, the trial court ordered the parties to mediate the case. Mediation is contemplated by Trial Rule 16(A) and mandated

by the Marion County Local Rules, which are authorized by Trial Rule 81. Marion County Local Rule 16.3(C)(1) expressly provides that "all cases where a timely demand for jury trial is made, mediation pursuant to A.D.R. Rule 2 is mandatory." The trial court's sanction of dismissal with prejudice was in response to Office Environments' failure to comply with the trial court's order to mediate the case—not a violation of the mediation rules—and therefore, Trial Rule 41(E) is the applicable rule—not A.D.R. Rule 2.10.

Further, we cannot say that the trial court erred in finding Trial Rule 41(E) to govern instead of A.D.R. Rule 2.10 because Rule 2.10 limits sanctions to "assessment of mediation costs and/or attorney fees relevant *to the process.*" (emphasis supplied). Here, the process—other than scheduling—never really started. Moreover, to limit sanctions for violating a trial court's order to mediate to costs and attorney fees could frustrate the goal of encouraging parties to come to the table to mediate. If the parties—as in this case—never come together to mediate, then the exposure is limited as mediation costs and/or attorney fees would be minimal. Thus, the incentive to comply with orders to mediate, or to follow the proper procedures for relief from such orders, becomes negligible. Given the strong emphasis for resolving issues through mediation, this is not a desired result. While we agree that once the parties begin the process of mediating Rule 2.10 is controlling, we cannot say that a trial court is limited by Rule 2.10 in what sanctions it can impose for a violation of its order that a case proceed to mediation.

■ Having decided that Trial Rule 41(E) controls, not A.D.R. Rule 2.10, we note that we will reverse a ruling under Trial Rule 41(E) only where there is an abuse of discretion. *Rueth Dev. Co. v. Muenich,* 816 N.E.2d 880, 884 (Ind.Ct.App. 2004), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. *Stoehr v. Yost,* 765 N.E.2d 684, 686 (Ind.Ct.App.2002), *trans. denied.*

Trial Rule 41(E), in pertinent part, states:

> **Failure to prosecute civil actions or comply with rules.** Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. . . .

In addition to violations of the trial rules themselves, this Court has unequivocally stated that Trial Rule 41 applies equally to orders of the court issued pursuant to the trial rules. *Benton v. Moore,* 622 N.E.2d 1002, 1006 (Ind.Ct.App.1993), *reh'g denied; Farinelli v. Campagna,* 166 Ind.App. 587, 597, 338 N.E.2d 299, 305 (1975).

In *Farinelli,* we opined that a court may dismiss a lawsuit under Trial Rule 41 "for disobedience by the plaintiff of an order concerning the proceedings."[3] *Farinelli,* 166 Ind.App. at 592, 338 N.E.2d at 302 (citation omitted). In so opining, we fo-

---

**3.** The remedy for a defendant's disobedience of an order concerning the proceedings is default pursuant to Indiana Trial Rule 55(A): When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted.

cused on a trial court's administrative power to order dismissals because "[t]he ever-increasing reliance placed upon our court system to solve disputes . . . [has] brought us to the juncture where judicious exercise of the trial court's powers may be essential to preserve any semblance of effective operation of the litigative system." *Id.* at 301. We noted, however, that "the power of administrative control, especially when exercised in terms of dismissal or default of the action, should not be lightly indulged in." *Id.* at 303–04. Thus, we stated that "it is entirely proper for the acting court, and the reviewing court, to consider the entire record of facts and circumstances surrounding the particular case when judging whether an administrative control sanction should be imposed or sustained." *Id.* at 304. Finally, we noted that "our review on appeal is limited to ascertaining whether the course chosen constitutes a clear abuse of discretion." *Id.*

■ To determine whether a trial court has abused its discretion by dismissing a case under Trial Rule 41(E), we generally balance several factors, including: (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. *Rueth Dev. Co.*, 816

N.E.2d at 884. The weight any particular factor has in a particular case depends on the facts of that case. *Belcaster v. Miller*, 785 N.E.2d 1164, 1167 (Ind.Ct.App.2003), *trans. denied.*

■ Office Environments filed its complaint against Lake States on January 4, 2001. Because the complaint requested a jury trial, the trial court issued an order in August 2001, which directed the parties to complete mediation of the case sixty days prior to trial. Office Environments did not seek relief from this order to mediate. Although the selected mediator began circulating calendars in October 2001, mediation was not scheduled until April 16, 2002—due in part to Frazier not returning the calendars in a timely manner. Once the mediation was scheduled, Frazier asked that it be rescheduled because of an unspecified conflict. Thereafter, the mediation was rescheduled for May 3, 2002. By agreement of the parties, the May 2002 mediation was cancelled and rescheduled for November 26, 2002. On November 25, 2002, Frazier called to cancel the mediation scheduled for the following day. The mediation was eventually rescheduled for November 7, 2003. The mediator, however, developed a conflict, which resulted in the mediation being rescheduled for March 6, 2004. In the interim, Frazier withdrew as Office Environments' counsel due to non-payment issues, and Hansen entered his appearance. The mediator then developed another conflict and rescheduled the mediation for April 8, 2004. Meanwhile, Hansen advised the mediator that he would not be responsible for any of the mediation costs or expenses and that his client would remain fully responsible for any charges. This prompted the mediator to request a retainer of $600 from Office Environments, which it refused to pay. Thereafter, the mediator cancelled the April 2004 mediation, and Lake States

filed a motion to dismiss the case based on Office Environments' failure to participate in the mediation as directed by the trial court.

Office Environments' complaint had been on the court's docket for over three years when the trial court dismissed the case. Additionally, the trial court first ordered the party to mediate the case over two and one-half years before it dismissed the case. During this time, the jury trial was continued four times.

While not all of the delays in commencing the court-ordered mediation are attributable to Office Environments, Office Environments did cause the mediation to be rescheduled at least three times and its refusal to pay the requested retainer resulted in the final cancellation. In the delays attributable solely to Office Environments, no explanation was given other than that there was a conflict. Furthermore, several delays in arranging for the various mediation dates were attributable to Office Environments. Moreover, the record reveals that Office Environments' principal, Robert Hancock, was uncooperative as exemplified by the fact that it took nearly ten months and seven deposition notices "before [Hancock] finally appeared at deposition with the documentation requested in [Lake State's] subpoena duces tecum." Appellant's App. p. 90. Further, at least one of Office Environments' attorneys withdrew from representation because Office Environments refused to pay an additional retainer. Hence, this is not a situation where an attorney's lack of diligence is the sole reason for dismissal. Indeed, the client here was responsible for at least some of the delays and for ultimate cancellation due to its refusal to pay the retainer.

Meanwhile, Lakes States had to devote time and energy into scheduling and preparing for the various mediation dates—one of which was cancelled by Office Environments the day beforehand—and had these claims hanging over its head for over three years. Although the trial court could have first imposed a lesser sanction such as attorney fees and costs under our trial rules,[4] we question the appropriateness of such a remedy in light of Office Environments' history of being unable or unwilling to pay fees and costs.

As with any case, we would prefer to see a case decided on its merits; however, the trial court is better suited to determine whether dismissal under Trial Rule 41(E) is appropriate. Further, we agree with the dissent that not every case is appropriate for mediation. And in fact, our A.D.R. rules contemplate such situations and provide a mechanism for parties to follow in order to be excused from a trial court's order to mediate. Office Environments, nevertheless, refused to avail itself of the proper channels for launching its objection to the mediator's demand for a retainer. Specifically, Office Environments neither sought relief from the trial court's order to mediate nor did it present any evidence regarding its inability to pay the retainer. Instead, Office Environments responded to the motion to dismiss by denouncing the utility of mediation—an argument it should have made two and one-half years before when the mediation was initially ordered:

> [M]ediation is not something that if we went to it . . . it would be likely to be successful. . . . We hadn't refused to at-

---

4. Trial Rule 41(E) vests the trial court with discretion to fashion remedies other than outright dismissal: "Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution."

tend mediation. There may be some financial issues, which may need to be worked out, but we have not refused to attend.

*See id.* at 29–30.

Based on the foregoing review of the factors relevant to a Trial Rule 41(E) dismissal, we cannot say that the trial court abused its discretion by dismissing Office Environments' complaint with prejudice. Consequently, we affirm.

Affirmed.

SHARPNACK, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

Because I disagree with the majority's determinative conclusion the process of mediation had not started, I must respectfully dissent. I believe the mediation process started when the trial court provided notice on August 20, 2001 to all parties that they were ordered to mediation. Therefore, the sanctions the trial court could properly impose on Office Environments were limited by A.D.R. Rule 2.10 to mediation costs and attorney fees, and the sanction of dismissal of the complaint was not available to the trial court.

My belief is supported by A.D.R. Rule 2.7, which is entitled "Mediation Procedure." Rule 2.7(A) is entitled "Advisement of Participants." As "advisement of participants" is, by the rule's own terms, the first step in the "mediation procedure," this advisement must necessarily represent the initiation of the mediation process. Any other interpretation would frustrate the Alternative Dispute Resolution frame-

work. If, for example, the mediation "process" does not begin until the parties and mediator report to a scheduled mediation conference, no party could ever recover its attorneys fees for a delay of mediation.[1] That result seems inconsistent with A.D.R. Rule 2.10, which explicitly permits sanctions in the form of attorneys fees "relevant to the process." Under the majority's interpretation, nothing that occurred prior to the initial mediation conference would be covered under the A.D.R. rules; instead, the trial rules would apply. One wonders, then, what is the reason for and value of separate A.D.R. rules?

It is a well-established rule of statutory construction that we assume "the legislature did not enact a useless provision" such that "[w]here statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute." *In re Guardianship of Hickman,* 805 N.E.2d 808, 816 (Ind.Ct.App.2004) (quoting *Robinson v. Wroblewski,* 704 N.E.2d 467, 474–475 (Ind.1998)), *trans. denied* 822 N.E.2d 979 (Ind.2004). Nor would I attribute to our supreme court an intent to enact "useless" rules when it promulgated A.D.R. rules that are independent of the trial rules.

Only the A.D.R. rules should apply to A.D.R. proceedings. A.D.R. Rule 2.10 makes that clear by limiting sanctions to assessment of mediation costs and/or attorney fees. T.R. 41(E), which provides the sanction of dismissal, applies when there has been a failure to comply with "these rules." The term "these rules" in T.R. 41(E) undoubtedly refers to the trial

---

1. The majority notes Lake States "had to devote time and energy into scheduling and preparing" for mediation and "had these claims hanging over its head for over three years." (Op. at ——.) It then goes on to state "the trial court could have first imposed a lesser sanction such as attorney fees and costs[.]" *Id.* But if, as the majority holds, the mediation "process" had not yet started, the trial court could not in fact have imposed that "lesser sanction" provided under the A.D.R. rules.

rules, and not the A.D.R. rules. *And see Ford v. State*, 650 N.E.2d 737, 739 (Ind.Ct. App.1995) (specific provisions (here, the A.D.R. rules) prevail over general provisions (here, the trial rules) with relation to the same subject matter).

Nor do I believe Office Environments has failed to comply with the trial court's order for mediation to such an extent its claim should be dismissed with prejudice. As the majority notes, that "order" required the parties to complete mediation at least sixty days prior to the set trial date. When Lake States filed its Motion to Dismiss, no trial date had been set. Without such a set trial date, Office Environments could not be in violation of the court's order to mediate.

There is no question there were delays in this case, but not all were attributable to Office Environments. For example, on June 23, 2003, Lake States and Office Environments filed a joint motion for continuance of their ninth choice trial setting. Counsel for Lake States represented to the court that the case involved "complex damages issues." (App. at 71.) The mediator twice cancelled scheduled mediation conferences due to conflicts. On at least one occasion the attorneys for both sides—not just Office Environment's counsel—failed to respond to the mediator's request for calendars, and the May 2002 mediation conference was rescheduled because neither party was ready.

This mediation dispute is more appropriately resolved by application of the A.D.R. Rules. I believe the trial court erred in dismissing this case under Trial Rule 41(E), and I accordingly would reverse and remand for further proceedings.

I offer a final comment. Many counties require mediation in all civil cases, and I do not believe that is a good practice. Some cases simply cannot be productively dealt with through mediation. When me-

diation is imposed without any inquiry into whether that process suits the dispute or the litigants, parties will often be ordered into mediation when both sides (and perhaps the judge, as well) know the process will be futile. In some situations, like the one before us, a party alleges its financial difficulties are attributable to an act or omission by the other party. Forcing the financially challenged party into mediation, and forcing that party to pay mediation costs, will often be counter-productive.