CHRYSLER CORPORATION, Appellant (Defendant Below),

v.

Edward REEVES, Appellee (Plaintiff Below).

No. 3–477A107.

Court of Appeals of Indiana, Fourth District.

May 22, 1980.

Rehearing Denied July 18, 1980.

Joel C. Levy, Thomas J. Hall, Singleton, Levy & Crist, Highland, for appellant.

Stephen H. Meyer and William J. McIlwain, Chudom & Meyer, Schererville, for appellee.

YOUNG, Judge.

The judge of the Newton Circuit Court has delivered judgment on the issue of liability against the Chrysler Corporation and in favor of Edward Reeves as a penalty for Chrysler's violation of discovery orders in a suit by Reeves against Chrysler and its dealer for breach of contract and damages—an action arising out of the sale of a used car. Whether a contract was breached or damages due was disputed. If we affirm, the sole issue remaining for trial is what damages are due Reeves.

Suit was filed September 12, 1973, and the amended complaint answered by Chrysler January 17, 1974. In October 1974 Reeves filed a number of interrogatories to be answered by Chrysler one of which, number 29, asked that the Corporation tell Reeves the number of complaints by customers to Chrysler during 1971 and 1972 concerning ignition and electrical wiring difficulties of 1972 model year Chrysler automobiles. The question asked Chrysler to provide (a) the date of the complaint; (b) the precise nature of each complaint; (c) the names and addresses of the persons making the complaint and; (d) the precise nature of the action taken by Chrysler in response to each complaint. Chrysler objected to the question on the grounds of irrelevancy.

After a hearing before the trial judge, Chrysler's objection was overruled and the interrogatory was ordered to be answered. However, the trial judge told Chrysler that if responding to the inquiry proved too burdensome, he would reconsider his ruling. In Chrysler's view, it was thought to be too burdensome. Thus Chrysler, under our rules, filed a motion for a protective order seeking to limit discovery and its duty to respond to the question reporting that in order to find the facts sought by the interrogatory it would be necessary to examine each of 1,062,380 claims made regarding 1972 models to determine whether the claim concerned either (1) ignition difficulties or (2) electrical wire malfunction. Such research according to Chrysler would involve total man hours in a range of 44,523 and 88,505. At a wage rate of $6.95 per hour, the cost of such research was estimated to be between a low of $294,283 and a high of $555,556. This estimate did not include the cost of paper or computer time. These facts, although probably peculiar to Chrysler's knowledge, were undisputed. (Reeves' complaint contains a prayer for $7500 compensatory and $10,000 punitive damages.) Chrysler argued that such a search was burdensome and oppressive and if ordered, Reeves should pay the cost in advance. The motion for protective order was overruled. Chrysler asked the trial judge to reconsider overruling its motion for protective order. The trial judge took the matter under advisement. While the matter was under advisement, Chrysler filed an affidavit of its manager of warranty registration which, in substance, recited the above facts under oath. Again, the truth of the facts contained in the affidavit was not disputed by Reeves.

After considering the matter from September 17, 1975, until October 22, 1975, the trial court overruled Chrysler's motion to reconsider and ordered the interrogatory answered with the statement *"the court does not require a complete computer runout as counsel contemplates; a simple statement of counsel for defendant Chrysler Corporation, based upon reasonable certainty, or information and belief will suffice."*

(Our emphasis.) Whether this was intended to modify the interrogatory or was a judicial aside is unclear to us, and must have been unclear to Chrysler, also. There is nothing in the record to indicate what counsel may have contemplated in this respect. Nonetheless, Chrysler answered the interrogatory responding that its search of its records involved a random selection of warranty repair orders on 1972 Chrysler vehicles. It attached copies of 12 separate warranty orders gleaned from its search. The orders were derived from a microfilm history file and copied.

Reeves, unsatisfied, filed his Motion for Default or Sanctions asking that Chrysler be held in contempt and that it be penalized for violating orders of the trial court regarding the discovery procedure. Arguments on the Motion for Default and for Sanctions was held on March 22, 1976. On March 29, 1976, the trial court ruled that Chrysler had indeed violated the rules of discovery entering a default judgment against Chrysler on the issue of the liability alleged in Reeves' suit and for attorney's fees in the sum of $500. The remaining issue of damages was reserved for trial by jury.

Chrysler initiated the appellate process by filing a Motion to Correct Errors dated June 25, 1976. The trial court overruled this motion stating that "it [the trial court] had made every effort to assist the parties but that Chrysler after being advised that a random sampling would be acceptable failed to inform the court or counsel for the plaintiff what method of sampling was made by the company." No where in the record can we find this judicial direction. (This is the first mention by the trial court on the record that a random sample would suffice.) The trial court also stated that *"to date no information was given to the [trial] court or the plaintiff as to how the samples were taken."* (Our emphasis.) Again the record is silent regarding any order of the trial court in this regard. In response, Chrysler filed a second Motion to Correct Errors attaching the affidavit of its manager of Service Systems and Operations

to the effect that he had supervised the "vehicle history file" for the period in question. He further stated that the computer printout of labor operations for wiring and ignition complaints consisted of 10,000 pages listing 228,000 electrical, 49,000 wiring and 17,000 ignition complaints. This search selected a random sample of one warranty repair order for every 25,000 claims.

The trial court overruled this second Motion to Correct Errors with the comment that the information presented in the affidavit *"might have prevented the trial court's adverse ruling upon Chrysler's first Motion to Correct Errors, but subsequent filing of the information does not cure the original defect."* (Our emphasis.) Again, the meaning and logic of this statement escapes us. Now having information before him that Chrysler's so-called non-compliance was explained, it would seem to remedy the earlier default. What the "original defect" was is unclear. Was it in not furnishing the data sought by number 29? or the "simple statement of counsel based upon reasonable information and belief?" From the overruling of this Motion to Correct Errors Chrysler initiated the appeal process.

 Chrysler followed the normal appellate procedure for appealing from a final judgment. Reeves filed a Motion to Dismiss or Affirm and a brief in support of that motion at the same time its brief on the merits was filed. The Motion to Dismiss or Affirm argued that the order entering the partial default judgment was interlocutory citing *Schenkel v. Citizens State Bank*, (1967) 140 Ind.App. 558, 224 N.E.2d 319. The Court of Appeals denied Reeves' Motion to Dismiss or Affirm and suspended consideration of the appeal so that the trial court could "finalize" its judgment against Chrysler Corporation as provided in Trial Rule 54(B). Reeves petitioned for a rehearing on the denial of its Motion to Dismiss or Affirm. The Petition for Rehearing was denied and mention is made of the filing of a petition seeking transfer. The Clerk of the Supreme Court has no record of such filing and therefore we assume that that petition was not filed. The trial court "finalized" its judgment in compliance with the order of the Court of Appeals and Chrysler thereafter filed a third Motion to Correct Errors (as directed by the Court of Appeals) which was overruled the same day. This appeal is from the overruling of that motion to correct errors.[1]

Chrysler comes to us appealing that (1) the imposition of the sanction of default on

1. To say the least, the appellate procedural posture set out in the text is unique. We have examined this procedure in order to fulfill our continuing duty of assuring that this court has jurisdiction. *Ingmire v. Butts*, (1974) 160 Ind. App. 575, 312 N.E.2d 885. The appeal from the judgment granting a partial default judgment without setting damages under TR. 37(B) was interlocutory in nature. *Schenkel v. Citizens State Bank*, (1967) 140 Ind.App. 558, 224 N.E.2d 319. Trial Rule 54(B) requires a judgment, in order to be certified as final, must be as to a *claim*, but may be on less than all the parties or claims. A claim involves both the elements showing entitlement to relief and that relief. TR. 8(A). Here, we do *not* have an adjudication of an entire claim; the order involves only a decision as to liability or entitlement to relief. Thus, there is not a judgment as to "one claim" but only an interlocutory order. *See* e. g., *Constanzi v. Ryan*, (1977) Ind.App., 370 N.E.2d 1333 (appeal from order directing appellant to respond to interrogatories); *Schenkel v. Citizens State Bank, supra*. Therefore, the appeal was premature and at the

same time subject to dismissal for failure to comply with the interlocutory appeal time limits. AR. 3(B), 8.1(B). However, the Court of Appeals within its discretion under AR. 4(E) and 15(N)(6) suspended its consideration of the case so that it might be remanded and attain jurisdiction in the Court of Appeals. *Ingmire supra*. The order of this court implementing such a remand requested finalization under TR. 54(B), and then renewal of the process of appealing a final judgment. [Apparently this was a practice of this court. *See* concurring opinion in *In re Estate of Garwood*, (1978) Ind.App., 382 N.E.2d 1020 at 1022, vacated at 400 N.E.2d 758. While the same result is achieved, we believe this appeal has remained interlocutory and may properly be viewed as appealed under AR. 4(B)(5). The finalization is actually a certification by the trial court under AR. 4(B)(5) and the order of this court is essentially a finding necessary in order to invoke our jurisdiction. We make this rationalization of the procedure here in order that we may review the matter on its merits, especially in light of the journey taken by this case reaching this point.]

the issue of liability was contrary to law; (2) the trial court erred in entering sanctions for failure of Chrysler to comply with the trial court's orders to answer the interrogatory for the reason that the interrogatory is irrelevant; and that the trial court erred in requiring Chrysler to answer an interrogatory that by its terms was oppressive and required Chrysler to engage in burdensome and expensive research into its own business records in order to give an answer; (3) the trial court erred in its finding that Chrysler failed to make a good faith effort to comply with its orders regarding the interrogatory; (4) the trial court erred in awarding attorney's fees; (5) the trial court erred in finding that Chrysler failed to comply with its order for the reason that the order was ambiguous, contradictory and impossible to comprehend; (6) the trial court erred in finding that Chrysler failed to inform the trial court or counsel for plaintiff what method of sampling was selected.

The judgment of the trial court is contrary to law in that there was no violation of the rules of discovery in this instance that would warrant the imposition of sanctions. As first posed, interrogatory 29 was a plain request for information from Chrysler from its company records. The subsequent comments of the trial court created an ambiguity which so detracted from the contents of the interrogatory as to make it contradictory and impossible to comprehend. Chrysler answered the interrogatory by a random sample—a method apparently directed by the trial court—and then was told the answer was incomplete because no method of sampling was disclosed. Then when the method of sampling was furnished, was told that such disclosure would not cure the original default. The record does not support the finding that Chrysler answered in bad faith.

 Discovery is designed to be self-executing with little, if any, supervision necessary by the trial court. Its implementation is automatic in most instances with deadlines designed to accelerate the process and expedite the trial of causes. It is usu-ally a cooperative effort. When it breaks down, penalties are provided by our rules which may vary in their severity. The imposition of such penalties are clearly within the discretion of the trial judge. However, such discretion is not limitless. Here, the boundary has been reached and overrun. The sanction contemplated by Trial Rule 37 requires that there has been a violation of discovery rules in the first instance, namely that a party has failed to answer an interrogatory, or while acting in bad faith, makes an evasive or incomplete answer.

(B) Sanctions—Contempt, damages and default. To avoid abuse of discovery proceedings and to secure enforcement of the discovery provisions of these rules in any enforcement or protective proceedings under the discovery provisions of these rules or upon motion and notice by a party, witness or person to any persons affected thereby:

(1) The court may enforce the attendance of witnesses by attachment, and punish disobedience of a subpoena or order issued or made under these discovery rules as a contempt of court in the manner as provided in Rule 45(F).

(2) The court may allow expenses, including reasonable attorney's fees, incurred by a party, witness or person, against a party, witness or person, responsible for unexcused conduct that is:

(a) punishable for disobedience of a subpoena or order under subdivision (B)(1) of this rule; or

(b) in bad faith and abusively making or seeking a deposition, interrogatories, production of evidence, inspection, examination, request, question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules; or

(c) in bad faith and abusively resisting or obstructing a deposition, interrogatories, production of evidence, inspection, examination, request, question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules.

(3) The court may order evidence upon matters to be taken as established or may order that evidence upon matters be refused as against a party subject to subdivision (B)(2) of this rule.

(4) The court may enter total or partial judgment by default or dismissal with prejudice against a party who is responsible under subdivision (B)(2) of this rule if the court determines that the party's conduct has or threatens to so delay or obstruct the rights of the opposing party that any other relief would be inadequate.

■ In *Clark County State Bank v. Bennett*, (1975) 166 Ind.App. 471, 336 N.E.2d 663, plaintiff applied for an order compelling discovery and alternatively for a motion for default for a failure to answer interrogatories propounded by the plaintiff. In that case the Court of Appeals held that default judgment was not proper and stated "a finding that a party has in bad faith and abusively resisted or obstructed discovery will not alone support the entry of a judgment of default pursuant to TR. 37(B)(4). That section requires an additional determination that the resisting or obstructing party's conduct has or threatens to so delay or obstruct the rights of the opposing party that any other relief would be inadequate." 336 N.E.2d at 669. In *Farinelli v. Campagna*, (1975) 166 Ind.App. 587, 338 N.E.2d 299, the trial court dismissed a case for failure to comply with discovery orders. In that case the defendant had moved for discovery and plaintiff had failed to comply. The court there noted several incidents of the discretionary power of the trial court in imposing sanctions under TR. 37(B)(4). Those include: (1) the discretionary power of the sanction under (B)(4) should not be lightly indulged in and not be used to deprive a litigant of his day in court; (2) it is proper to consider the entire record of the facts and circumstances surrounding a particular case; and (3) that the review on appeal will be to determine whether there was a clear abuse of discretion by the trial judge and the discretion of the trial judge should not be disturbed unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors.

■■ In *Noble v. Moistner*, (1979) Ind. App., 388 N.E.2d 620, the trial court entered a judgment of dismissal for failure to answer interrogatories in violation of a trial court order. *Noble* held two findings must be made before dismissing a case. First, the trial court must find responsibility for unexcused conduct under (B)(2) of the rule. However, there need not be a specific finding of bad faith and abusive conduct where a trial court order is violated.[2] Second, the trial court must find that the failure to proceed with discovery has or threatens to so delay the proceedings that other relief is inadequate, citing *Clark County State Bank, supra*. Chrysler argues that the trial court failed to make the second finding (that any other relief would be inadequate). However, on remand by the Court of Appeals on the motion to dismiss or affirm filed by Reeves the trial court in finalizing its judgment did make such finding. Furthermore, the trial court implicitly made such finding when it entered the partial default judgment on liability upon the motion of Reeves.

■ Nevertheless, we find the trial court abused its discretion in ordering a partial default because other relief would have been adequate. "Sanctions, when imposed for failure to comply with discovery rules or orders, should be such as to promote the goal of discovery, not to punish the offending party. . . . Dismissal [or default]

---

2. This distinction was noted in *Farinelli, supra*, where it was held under TR. 37(B)(2)(c) if the party merely resists or obstructs the action of another party in attempted discovery the court must find that the party was acting "in bad faith and abusively." However, where the other party has secured a court order directing the answer, subdivision (B)(1) is incorporated through subdivision (B)(2)(a) and requires the court to find that an order was in fact violated, and the violation "resulted from unexcused conduct for which the party was responsible." 338 N.E.2d at 303.

should be employed only as a last resort." *Presbyterian St. Luke's Hospital v. Feil*, (1979) 75 Ill.App.3d 438, 31 Ill.Dec. 335, 339, 394 N.E.2d 537, 541. Judge Russell writing for the Fourth Circuit Court of Appeals in *Wilson v. Volkswagen of America, Inc.*, (1977) 561 F.2d 494 considered the power of the trial court to impose sanctions under Fed.R.Civ.P., Rule 37(b).[3] In discussing this power and the appellate standard of review, he writes:

> The power to impose sanctions under Rule 37(b) for failure, after court order in discovery proceedings to produce documents, is discretionary with the Trial Court. It is not, however, a discretion without bounds or limits but one to be exercised discreetly and never "when it has been established that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of [the noncomplying party]." Particularly is the Court to act cautiously when the sanction imposed is that of default judgment, which is "the most severe in the spectrum of sanctions provided by statute. or rule." In that situation the Trial Court's "range of discretion is more narrow" than when the Court is imposing other less severe sanctions. The reason for this narrower range of discretion is that the sanction of a default judgment, though "a rational method of enforcement of the discovery rules," in an appropriate case, represents in effect "an infringement upon a party's right to trial by jury under the seventh amendment" and runs counter to "sound public policy of deciding cases on their merits," and against depriving a party of his "fair day in court." Because of the importance of these constitutional and policy considerations, a leading text has stated that the exercise of the power should be confined to the "flagrant case" in which it is demonstrated that the failure to produce "materially affect[s] the substantial

rights of the adverse party" and is "prejudicial to the presentation of his case." This is so because a default judgment should normally not be imposed so as "to foreclose the merits of controversies as punishment for general misbehavior" save in that rare case where the conduct represents such "flagrant bad faith" and "callous disregard" of the party's obligation under the Rules as to warrant the sanction not simply for the purpose of preventing prejudice to the discovering party but as a necessary deterrent to others. Even in those cases where it may be found that failure to produce results in the discovering party's case being jeopardized or prejudiced, it is the normal rule that the proper sanction "must be no more severe * * * than is necessary to prevent prejudice to the movant."

561 F.2d at 503–04 (footnotes omitted). The balance between the litigant's opportunity to be heard on the merits and moving a proceeding along to judgment in a speedy manner was the basis for reversing the entry of a default judgment in *Edgar v. Slaughter*, (8th Cir. 1977) 548 F.2d 770. The court reviewed several prior cases discussing the sanctions under 37(b) and stated:

> These cases reflect the proper balance between the conflicting policies of the need to prevent delays and the sound public policy of deciding cases on their merits. (Citations omitted) This balance recognizes that a trial judge should have wide latitude in controlling pretrial discovery orders and should seek compliance with his orders. But this balance also recognizes that in our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied. Prior to dismissal or entering a default judgment, fundamental fairness should require a district court to enter an order to show cause and hold a hearing, if deemed necessary, to deter-

---

**3.** The federal rule and our rule differ in organization, but the scheme of imposing sanctions is sufficiently similar to be helpful in determining the propriety of the more severe sanctions. Civil Code Study Commission Comments, 1 W.

Harvey, Indiana Practice at 211 (1969); *Finley v. Finley*, (1977) Ind.App., 367 N.E.2d 1126, 1127; 3 W. Harvey, Indiana Practice 122 (1970).

mine whether assessment of costs and attorney fees or even an attorney's citation for contempt would be a more just and effective sanction. Dismissal and entry of a default judgment should be the rare judicial act. When non-compliance is the result of dilatory conduct by counsel, the courts should investigate the attorney's responsibility as an officer of the court and, if appropriate, impose on the client sanctions less extreme than dismissal or default, unless it is shown that the client is deliberately or in bad faith failing to comply with the court's order. 548 F.2d 772–73 (footnotes and citations omitted).

While the federal rule and our rule are not identical, the policies considered in the above federal cases are those which this state has also found important. TR. 1; *Clark County State Bank, supra; Finley v. Finley,* (1977) Ind.App., 367 N.E.2d 1126. For example, in *Finley* the court said "[t]he intent and purpose of the Rule together with the inherent power of the trial court to do those things which are necessary to move the proceedings along to judgment support [the conclusion that the court has the discretionary power to make orders as are just.]" 367 N.E.2d at 1127. In adopting the rules, the stated policy of the rules was to decide cases on the merits. Civil Code Study Commission, 1 W. Harvey, Indiana Practice at 211 (1969). Trial Rule 1 also directs the construction of the rules "to secure the just, speedy and inexpensive determination of every action." Therefore considering these policies, we conclude the trial court abused its discretion and other relief would have been adequate if sanctions were to be imposed.[4]

Reeves contends that other relief in the form of orders would be inadequate because Chrysler has already disobeyed court orders. The assessment of costs for attorneys' fees when it became necessary for Reeves to seek an order to compel Chrysler to answer the interrogatory or defend repetitive motions would preserve the possibility of a

trial on the merits and finance the defense of dilatory tactics. Dean Harvey comments that a litigant may be "deprived of this right to assert his claim or defense, because he cannot afford the endless hours and costs involved in countless motions, requests and filings." 1 Indiana Practice 213. A litigant would have the means to assert his claim or defense. If motions limiting discovery proved fruitful, costs would be improper and justice served. Also sanctions conditioned upon compliance with court orders would have been adequate. There may be other remedies, short of default, that are adequate here, but we will not attempt an exhaustive list.

Reversed.

MILLER, P. J., and CHIPMAN, J., concur.

---

4. That is to say, based upon a weighing of these policies the sanction of default or dismissal is never appropriate without entry of a lesser sanction first.