**Charles BREEDLOVE, Appellant**
**(Plaintiff Below)**

v.

**Jean BREEDLOVE, Appellee**
**(Defendant Below).**

**No. 2–181A33.**

Court of Appeals of Indiana,
Second District.

June 17, 1981.

Rehearing Denied August 4, 1981.

Michael A. Kiefer, Garrison & Kiefer, Indianapolis, for appellant.

David M. Payne, Fairmount, for appellee.

SHIELDS, Judge.

The marriage of the parties to this appeal, appellant Charles Breedlove and appellee Jean Breedlove, was dissolved in November 1968. As part of the divorce decree, Charles was ordered to pay the sum of $175 per week for the support of the five (5) minor children. In July 1979, Jean brought this action to recover $83,015 in support arrearages. After Charles answered the complaint, Jean propounded interrogatories to Charles, some of which Charles failed to answer even though he was twice ordered to do so by the trial court. As a result of Charles's disobedience of the trial court's orders, default judgment was entered against him. Following a hearing on the amount of support owed, Jean was awarded $90,540 in support arrearages and $2,250 attorney fees.

Charles appeals from this judgment raising the issues that the trial court erred:

I. In defaulting Charles for violation of orders compelling discovery because of an inadequate factual basis and because it failed to make adequate findings;

II. In not giving him adequate notice of the hearing on damages;

III. In not retroactively reducing the support order as a result of the emancipation of children of the marriage;

and

IV. In not crediting Charles's obligation of support with amounts paid directly to the children.

We affirm.

## Issue I

Charles first argues the trial court erred in defaulting him for violation of the trial court's order compelling discovery.[1] First he reasons the trial court erred because it had an inadequate factual basis for the sanction.

The record reveals Jean filed interrogatories on September 11, 1979. Answers were designated due within 30 days after service. Ind.Rules of Procedure, Trial Rule 33(A). Jean's first motion to compel answers to the interrogatories, filed December 19, 1979, was denied because the motion failed to comply with a local court rule. Her amended motion was filed January 4, 1980 and, after a hearing on January 28, 1980, Charles was ordered to answer the interrogatories, without objection, within 15 days. Although late, answers to most of the interrogatories were filed February 26, 1980. Objections were propounded to the unanswered interrogatories. Jean filed a motion for default on February 29, 1980 which the trial court struck as moot because answers had been filed. On April 3, 1980 another motion for default with affidavits[2] was filed. After a hearing Charles was ordered to answer, without objection, the objected-to questions within 15 days of May 22, 1980. Jean's next motion for default with accompanying affidavits[3] was filed June 20, 1980; Charles filed a motion to dismiss; both motions were heard on July 8, 1980. There was no evidence submitted at this hearing on the issue of the default itself.

■ Although discovery is designed to be self-executing with little, if any, supervision or assistance by the trial court, Ind.Rules of Procedure, Trial Rule 37 provides the trial court with tools to enforce compliance in order to encourage a just and speedy determination of the lawsuit. The trial court may impose various sanctions ranging from allowance of expenses to entry of dismissal or judgment by default.[4] The choice of

1. It is interesting to speculate on the default. Jean's motion for default sought a hearing followed by a judgment. Charles's motion sought the dismissal of the motion for default because Jean was seeking "too much" and, hence, a default judgment should not be granted until she proved the specific amount due. At the hearing all the evidence was directed just to that issue. Thus, the issue of the amount of the arrearage, if any, was in fact litigated. Consequently, although the trial court in its entry, "grants defendant's Motion for Default and enters a default of plaintiff and upon such default finds that the defendant is entitled to recover judgment and attorney fees against plaintiff . . .," we are at a loss to determine upon what issues, if any, Charles was in fact defaulted or indeed the effect, if any, of the default. However, the parties address the issue of a default and, consequently, so do we.

2. The affidavits concerned the amount of unpaid support and the services rendered Jean by her attorney.

3. The affidavits concerned the amount of unpaid support and the services rendered Jean by her attorney.

4. T.R. 37(B) provides:

"To avoid abuse of discovery proceedings and to secure enforcement of the discovery provisions of these rules in any enforcement or protective proceedings under the discovery provisions of these rules or upon motion and notice by a party, witness or person to any persons affected thereby:

(1) The court may enforce the attendance of witnesses by attachment, and punish disobedience of a subpoena or order issued or made under these discovery rules as a contempt of court in the manner as provided in Rule 45(G).

(2) The court may allow expenses, including reasonable attorney's fees, incurred by a party, witness or person, against a party, witness or person, responsible for unexcused conduct that is:

(a) punishable for disobedience of a subpoena or order under subdivision (B)(1) of this rule; or

(b) in bad faith and abusively making or seeking a deposition, interrogatories, production of evidence, inspection, examination, request question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules; or

(c) in bad faith and abusively resisting or obstructing a deposition, interrogatories, production of evidence, inspection, examination, request, question, enforcement order, subpoena, protective order or any other remedy under the discovery provisions of these rules.

(3) The court may order evidence upon matters to be taken as established or may order that evidence upon matters be refused as against a party subject to subdivision (B)(2) of this rule.

(4) The court may enter total or partial judgment by default or dismissal with preju-

sanction is a matter within the discretion of the trial court. *Chrysler Corporation v. Reeves* (1980) Ind.App., 404 N.E.2d 1147; *Hawkins v. Means Auto, Inc.* (1980) Ind. App., 403 N.E.2d 1106; *Farinelli v. Campagna* (1975) 166 Ind.App. 587, 338 N.E.2d 299.

▓▓▓ The sanction of dismissal or default is obviously more drastic and severe than other available sanctions. Because the law favors the disposition of cases on their merits, the imposition of these sanctions is appropriate only under limited circumstances or in extreme situations. Where an alternate less drastic sanction would be effective it must be utilized. T.R. 37(B)(4). However, where a responsible party has in bad faith abusively resisted or obstructed discovery or violated a court order enforcing discovery, and the court finds such conduct has delayed or obstructed, or threatens to so delay or obstruct, the rights of the opposing party so that other relief would be inadequate, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for the noncompliance. *National Hockey League v. Metropolitan Hockey Club, Inc.* (1976) 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747; *Margoles v. Johns* (1978 7th Cir.) 587 F.2d 885; *G–K Properties v. Redevelopment Agency, Etc.* (1978 9th Cir.) 577 F.2d 645; *Norman v. Young* (1970 10th Cir.) 422 F.2d 470; *Hawkins v. Means Auto, Inc.* (1980) Ind.App., 403 N.E.2d 1106; *Clark County State Bank v. Bennett* (1975) 166 Ind.App. 471, 336 N.E.2d 663.

As was stated by the United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.* (1976) 427 U.S. 639 at 642–3, 96 S.Ct. 2778 at 2980–1:

"There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party

who has been subjected to such order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

"But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts."

▓▓ In reviewing the dismissal or default judgment (total or partial), the question before this court is whether the trial court abused its discretion. Here, Charles failed to make timely answers or objections to Jean's interrogatories. He further failed to comply with the trial court's order to answer the interrogatories, without objection, within 15 days. When he did file late answers to most of the interrogatories, he also filed objections to some, contrary to the trial court's order. Charles disobeyed another trial court order to answer the objected-to questions within 15 days of May 22, 1980. In fact, on the day of the hearing on Jean's motion for default filed as a result of his previous disobedience, answers were still outstanding. This record amply supports the determination made by the trial court that orders enforcing Jean's discovery rights were violated by Charles.

We further find the record supports the trial court's implicit determination that Charles's conduct "has or threatens to so

dice against a party who is responsible under subdivision (B)(2) of this rule if the court determines that the party's conduct has or

threatens to so delay or obstruct the rights of the opposing party that any other relief would be inadequate."

delay or obstruct" Jean's rights that any other relief would be inadequate. Delay is apparent. The day Charles was defaulted, Jean remained without answers to interrogatories she had requested ten months earlier.

Charles does not suggest other sanctions against him which would have produced his answers. Contempt was not a viable alternative because the trial court earlier dismissed Jean's petition for citation against Charles based on the trial court's determination that Charles was not a resident of Indiana subject to the court's powers of contempt. Nor are we convinced that an order for expenses incurred by Jean in obtaining orders to comply would have obtained the answers. Charles's indifference to the trial court's orders is readily apparent.

Interestingly, the basis for Charles's motion to dismiss Jean's last motion for default was that the amount of the arrearage was disputed and not that there was no arrearage or that default was an inappropriate sanction. In fact, his motion to dismiss asserts:

> "That the efforts of ... (Jean) ... are the efforts of one seeking a judgment much larger than is due. Therefore, ... (Jean) should not be granted a default judgment *until* she has proved the specific amount due." (Our emphasis)

At the hearing on the two motions Charles similarly failed in any manner to dispute the appropriateness of the sanction, choosing to introduce evidence solely on the issue of the amount of the arrearage.

■ We conclude the trial court did not abuse its discretion in its application of the T.R. 37(B)(4) sanction. Necessarily then, we take exception to the footnote in *Chrysler Corporation v. Reeves* (1980) Ind.App., 404 N.E.2d 1147, 1154, that: "the sanction of default is never appropriate without entry of a lesser sanction first." We cannot agree with such an unsupported broad absolute statement. In most situations and circumstances the sanction of dismissal or default would be so extreme it would constitute an abuse of discretion without first attempting "lesser" sanctions. However, in rare circumstances, such as here, the sanction is not inappropriate as the imposition of other "lesser" sanctions without reasonable belief in their effectiveness merely adds to the innocent party's delay and frustration.

■ Charles also argues the court failed to make the findings required by T.R. 37(B)(4). There is no merit to this argument. When the trial court enters a dismissal or a default judgment on the opposing party's motion for sanctions, it implicitly makes these findings. There is no requirement within T.R. 37(B)(4) that the court make specific written findings of fact upon its own motion nor does T.R. 52 apply.

Issue II

■ Charles next complains the trial court erred in proceeding to assess the arrearage immediately after the entry of default. He argues that "[g]iven the necessity for a hearing on damages the Court's notice did not reasonably alert counsel that the Court intended to proceed immediately to an assessment of such damages."

The record, however, does not support Charles's contention that he was without notice the hearing would encompass the issue of the amount of support owed.

Jean's third motion for default prayed for a hearing, a judgment in the amount of $90,540 for support arrearages, and attorney fees of $15,000. This motion was accompanied by affidavits of Jean and her counsel setting forth the amount of support owed and the legal services rendered by counsel to Jean. Charles countered with a motion to dismiss the motion for default in which he only challenged the amount claimed by Jean. In addition, the court's notice provided that all pending matters were set for hearing. Further, at the hearing, Charles not only did not object to the proceeding but proceeded to introduce sev-

eral exhibits and indeed called the only witnesses.[5]

Under these circumstances we do not find error.

Issue III

Charles next argues the trial court committed reversible error when it refused to consider the issue of emancipation of any of the children in determining the amount of arrearage.

We disagree.

The support order required Charles to pay $175 per week for the support of the five minor children.

■ When a support order is undivided, the emancipation of less than all the children does not automatically reduce the obligated parent's duty under the support order. Unless the order is modified, the obligated parent is required to make the payments in the manner, amount, and at the time required by the original order as long as an unemancipated minor child remains. *Reffeitt v. Reffeitt* (1981) Ind.App., 419 N.E.2d 999; *Ross v. Ross* (1979) Ind.App., 397 N.E.2d 1066.

Charles's argument that this order is divisible is without merit.

Issue IV

■ Charles contends the court erred when it refused to consider direct payments to the children as credits upon the support arrearage.

Again, we must disagree.

Recently in *Whitman v. Whitman* (1980) Ind.App., 405 N.E.2d 608, we expressly held that expenditures or payments which did not comply with the terms of the support order may not be allowed as credits.

The support order in question did not provide for payments directly to the children and therefore Charles was not entitled to credit for such nonconforming payments.

Judgment affirmed.

5. The trial court indicated it would consider the affidavits in support of Jean's case. Charles did not object.

BUCHANAN, C. J., concurs.

SULLIVAN, J., concurs, with opinion.

SULLIVAN, Judge, concurring.

I concur, except to the extent that the majority implies that under no circumstances may a payment or expenditure directly to or for the child be credited to a support obligation. *See Whitman v. Whitman* (2d Dist. 1980) Ind.App., 405 N.E.2d 608 at 614–15 (concurring opinion).