Charles R. JACOB and Antonio Sofo d/b/a Antonio Sofo & Sons Importing Co., and individually, Appellants–Defendants,

v.

Jerry CHAPLIN and Constance Chaplin, Appellees–Plaintiffs.

No. 46A04–9210–CV–377.

Court of Appeals of Indiana, Fourth District.

Dec. 9, 1993.

Timothy J. Walsh, Edward N. Kalamaros & Associates, South Bend, for appellants-defendants.

Robert F. Gonderman, Sr., Gonderman Law Offices, South Bend, for appellees-plaintiffs.

MILLER, Judge.

This certified interlocutory appeal is a case of first impression in Indiana. The broad issue presented is whether a party has a presumptive right to establish conditions for a court ordered routine, Ind.Trial Rule 35 physical examination.[1] The specific issue is whether the trial court abused its discretion (and in the process, decided a new question of law) by issuing a protective order which in effect said that a plaintiff in a personal injury action, ordered to undergo a routine T.R. 35 examination, is entitled as a matter of right to tape record all conversations with the physician selected by the defendants.[2]

We find that there is no such presumptive right. The question of what, if any, conditions may be set by a protective order for such examinations are best left to the sound discretion of the trial court. However, the party seeking such an order bears the burden of establishing the need for such relief.

In the instant case, because the trial court's order is unsupported by any evidence, we find that the trial court abused its discretion in ordering the presence of a tape recorder at the examination and, therefore, we vacate its protective order.

## FACTS AND PROCEDURAL HISTORY

The underlying cause of action is a personal injury claim brought by the Chaplins against Jacob and Sofo (Jacob) for money damages. On October 11, 1989, Chaplin was injured in an accident in Mishawaka between his pickup truck and a semi-trailer operated by Jacob and owned by Sofo. The Chaplins filed their complaint on December 4, 1989. Mr. Chaplin complained of multiple fractures, multiple soft tissue injuries and a closed head injury with cognitive losses caused by the accident. On March 5, 1992, Jacob filed a motion for a physical examination under T.R. 35 asking that Chaplin be examined by a South Bend orthopedic surgeon, Doctor Earl J. Heller. The Order was granted the next day.

On March 10, 1992, Chaplin filed a motion for a protective order asking the court to allow him to tape record any conversations he had with Dr. Heller during the course of the examination. A hearing was held on April 6, 1992, after which the court granted the motion and said it "specifically grants the plaintiff leave to tape record any conversations he has with Dr. Heller during his T.R. 35 examination." R. 55.

---

1. **TRIAL RULE 35. PHYSICAL AND MENTAL EXAMINATION OF PERSONS:**

 (A) **Order for Examination.** When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, *conditions,* and scope of the examination and the person or persons by whom it is to be made. (Emphasis added).

2. This case involves the use of an audio tape recorder during the court ordered examination, a less intrusive condition than the presence of a court reporter or the plaintiff's attorney. The so called presumptive right to the presence of the plaintiff's counsel in a T.R. 35 examination is the basis for the demand for the presence of an inanimate recording device at the examination. As discussed *infra,* the issue of the presence of a recording device at such an examination is a sub issue of the alleged right of a plaintiff to have advice of counsel during such an examination.

On May 4th, Jacob filed a motion to reconsider and vacate the April 6th Order or, alternatively, to allow a certified interlocutory appeal. Attached were letters from a number of doctors stating they would not conduct an examination of a patient under such a condition (Heller and his partner had submitted similar affidavits with Jacob's motion in opposition to the order). Jacob also notified the court he would need two further medical examinations, one by a neurosurgeon and a second by a neuropsychologist. About four weeks later, Jacob supplied the court with affidavits from these two specialists. The neurosurgeon said he would only allow tape recording of the "history" part of the examination. The neuropsychologist stated he would allow a video tape of the entire examination providing a one-way mirror was used to prevent any distraction by the taping equipment.

The battle continued with Chaplin's counsel maintaining he could find an orthopedic surgeon willing to do the examination (Dr. Sobal) under the tape recording condition while Jacob's counsel continued to bombard the court with affidavits from numerous health care providers stating the opposite. Chaplin even suggested Jacob use the expert (Dr. Sobal) he had found. Needless to say, the parties never came to an agreement and on October 5, 1992, the trial court certified its order for an interlocutory appeal.

Chaplin then filed alternative motions with the trial court asking it to either reconsider its certification or vacate the protective order. Jacob opposed these motions on the grounds that the motion to vacate did not remove all obstacles to a routine examination. Chaplin's reply then asked that his attorney be present at the examinations. The trial court denied both motions on November 25, 1992, stating:

I am interested in the answer to this question because it is rather novel. There is no Indiana case on it and the only case I was ever able to find where this was permitted was where a psychological problem was involved and there was some problem where the patient would tell the doctor one thing and then say something else at the trial and based on that one case, I granted this order because there is a psychological problem[3] here and I'm quite interested to know whether the Supreme Court or the Court of Appeals is gonna follow this foreign jurisdiction or not. If not, and I'd like to have it settled. I think it's an important question.

R. 339–340.

We granted the petition for interlocutory appeal over Chaplin's objections on February 9, 1993. The motion war continued and Chaplin asked us to issue a writ of certiorari ordering the clerk of the trial court to supplement the record with the transcript of a June 8, 1992, hearing. We granted this request and on July 26, 1993, the case was fully briefed and transmitted to this court. On August 20, 1993, we *sua sponte* ordered Oral Argument for September 21, 1993, which was postponed at counsel's request to October 5, 1993.

We note that in spite of Chaplin's request that the transcript of the June 8, 1992, hearing be part of the record, he now insists that our review is limited only to the material reviewed by the trial court prior to issuing its order on April 6, 1992, and that none of the material submitted by either party after the April 6th hearing is relevant to the issue before us. The trial court's order was issued at the end of the April 6th hearing. Therefore, the issue is whether the trial court abused its discretion by issuing its protective order based upon the material before it at *that* hearing. In addition, the issue and arguments raised in this case are not new and have been discussed in other jurisdictions, both state and federal, numerous times.

### POLICY CONSIDERATIONS

As stated by Professor Harvey, the general scope of discovery is established in

---

**3.** This comment is not supported by any evidence in the record. In addition, Dr. Heller is an orthopedic surgeon and was not retained to perform psychiatric or psychological examinations.

Rule 26(B)(1),[4] and, thus, this rule is extraordinarily important. "It contains limitations which apply to all forms of discovery, and it speaks to the spirit, as Indiana decisions have also spoken, with which the use of discovery should be approached." William F. Harvey 2 *Indiana Practice* 492–493 (1992 supp.). In 1972, our supreme court said: "The true spirit of the new discovery rules may be described as twofold: (1) to provide for a minimum of court involvement in the discovery process and, (2) to allow for a more liberal discovery procedure." *Chustak v. Northern Indiana Public Serv. Co.* (1972), 259 Ind. 390, 288 N.E.2d 149, 153.

This court has stated: "Discovery is designed to be self-executing with little, if any, supervision necessary by the trial court. Its implementation is automatic in most instances with deadlines designed to accelerate the process and expedite the trial of causes." *Chrysler Corp. v. Reeves* (1980), Ind.App., 404 N.E.2d 1147, 1151.

Indiana law vests the trial court with considerable discretion in the area of discovery. Thus, in the rare cases when we review a claim of trial court error involving discovery questions, our standard of review is whether the trial court abused its discretion. *Harvey, supra,* at 517–518.

In a 1961 Note published by the Harvard Law Review and printed in its entirety in Harvey, *supra,* at 656, the writer noted that discovery serves these basic purposes:

1. it may remove before trial issues which are not likely to be seriously contested;

2. it brings about the disclosure and presentation at trial of all the relevant evidence;

3. it exposes fraudulent or groundless claims; and

4. it encourages pretrial settlements whenever possible in order to minimize the time, effort, and funds expended on the resolution of controversies.

*Id.* at 659–660. In sum, the policy behind the discovery rules is to narrow issues for trial, conserve valuable judicial time, limit litigation expenses and encourage settlements.

## DECISION

### I. SURVEY OF THE COMMON LAW

### A. Introduction

Indiana's version of T.R. 35, as amended, is taken almost verbatim from the Federal Rule. "As a result, Indiana's Rule 35 should be regarded as the same as Federal Rule 35, insofar as borrowing Federal cases for either instruction or interpretation." William F. Harvey, 3 *Indiana Practice* at 32 (1992 supp.).

We find ourselves in the same position as the Colorado Supreme Court where the court stated "[t]his court has not previously considered whether an examinee has a right to have a third party present at/or to tape record a medical examination ordered pursuant to [T.R. 35]." *Hayes v. District Court for the City and County of Denver* (1993), Colo., 854 P.2d 1240, 1244. The Colorado court then noted that other courts, both federal and state, have addressed this issue under rules containing identical or substantially identical language with diverse results.[5] *Id.* at 3 *citing* 84 A.L.R.4th 558 (1991).

Some state courts have concluded that a party ordered to undergo a T.R. 35 (or its counterpart) examination has a right to require the attendance of an attorney during the examination. Most recent of these is *Langfeldt–Haaland v. Saupe Enterprises, Inc.* (1989), *supra,* n. 2 at 1147 (the court

---

4. **Ind.Trial Rule 26. General Provisions Governing Discovery.**
(B): Scope of Discovery.
(1): In General.

5. Two recent state supreme court cases, *Hayes v. District Court for the City and County of Denver, supra,* and *Langfeldt–Haaland v. Saupe Enterprises, Inc.* (1989), Alaska, 768 P.2d 1144, best

summarize the law regarding T.R. 35 and its counterparts. Our discussion is based primarily upon these cases. As noted *infra,* the Alaska Supreme Court split on this question and provided us with an excellent dissent which raises almost every possible argument against recognizing a presumptive right to counsel's presence or involvement at a T.R. 35 examination.

also found the examinee had the right to tape record the examination). Other states which have followed this rule are Florida, New York, California (cases go both ways) and Washington. These courts consider the examination to be part of the adversary process. The Alaska case, *supra*, has a two-justice dissent to this position which will be discussed *infra*.

Other states have adopted the position that the question presented is committed to the sound discretion of the trial court. These states include Colorado, Minnesota, Ohio, Oregon, Montana and Wisconsin. The courts feel that the examination will often not be a neutral, impartial encounter. *Wood v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.* (1984), Minn.App., 353 N.W.2d 195, 197. Therefore, they allow some form of monitoring to protect the rights of the parties. However, these state courts agree that the party seeking a protective order bears the burden of establishing the need for such relief. *Whanger v. American Family Mut. Ins. Co.* (1973), 58 Wis.2d 461, 207 N.W.2d 74, 79.

Federal courts have construed Fed. R.Civ.P. 35 to prohibit the presence of attorneys at such examinations, i.e., there is no presumptive right to the presence of a third party—either an attorney, court reporter or recording device.[6] These courts include the district courts in Illinois, Pennsylvania, Delaware, and Maryland. The federal courts state that the presence of an attorney tends to interject an adversarial element into what should be a neutral and objective process of medical evaluation. These courts also feel that the ability to depose and cross-examine the examining physician more than adequately protects the rights of the parties. In addition, these courts are concerned with the potential pro-

fessional conduct issues that would arise if the party's attorney was required to testify at trial.

### B. The "Matter of Right" Argument

The Alaska majority found the cases that allowed counsel to be present persuasive because in their view, the T.R. 35 examination is a part of the litigation process and sometimes, a critical part. *Langfeldt–Haaland, supra*, at 1144. The court stated "[p]arties are, in general, entitled to the protection and advice of counsel when they enter the litigation arena. An attorney's protection and advice may be needed in the context of a Rule 35 examination, and we see no good reason why it should not be available." *Id.* Relying upon an Alaska criminal case and the Alaska Constitution, the court found the plaintiff's counsel had the right to attend and record, as a matter of course [i.e., a matter of right], court-ordered medical examinations in civil cases. *Id.* Therefore, it left the question of "appropriate protective orders" to the sound discretion of the trial court under [Alaska] Civil Rule 26(c). *Id.* The court then rather ingeniously concluded that "[t]he question whether defense counsel should also be allowed to attend the examination was not taken on review, and we express no opinion on this issue." *Id.*

### C. "There Is No Presumptive Right/ Sound Discretion of the Trial Court" Argument

Two justices of the Alaska Supreme Court dissented. Justice Moore, writing for the dissent, noted such a ruling raises grave policy concerns as well as practical problems for litigants, their counsel and the medical profession. *Id.* Justice Moore then said:

> that Zabkowicz, who claimed she was sexually harassed by a number of male co-workers, was entitled to have her counsel present during the examination. She had alleged emotional damage. The court felt that the defendant's expert was not sufficiently impartial and that the psychiatric examination could easily be transformed into a "defacto deposition." Therefore, her attorney was allowed to be present during the examination.

---

**6.** A single exception has been made for a psychiatric examination in a sexual harassment case. *Zabkowicz v. West Bend Co.* (E.D.Wis.1984), 585 F.Supp. 635; later proceeding 589 F.Supp. 780; later proceeding 601 F.Supp. 139; *aff'd* in part, *rev'd* in part (7th Cir.1986), 789 F.2d 540 (disagreed with on other grounds (pendant claims) by multiple cases as stated in *Huffman v. Hains* (7th Cir.1989), 865 F.2d 920. The initial district court *Zabkowicz* decision is the case relied upon by the trial court. The district court held

This ruling is premised on the assumption that most physicians hired to conduct independent medical examinations are nothing more than "hired guns." The assumption that most physicians will exceed the legitimate scope of such exams unless checked by the presence of opposing counsel denigrates the professionalism and objectivity of the medical profession. While cases of abuse certainly may exist, I submit that these situations are more appropriately dealt with on a case by case basis....

A presumptive rule allowing counsel into medical exams interjects an adversarial, partisan atmosphere into what should otherwise be a wholly objective inquiry. Many reputable physicians will be loath to perform such examinations if they become dominated by opposing counsel.... [t]he time has come for each profession [the legal and medical] to cooperate and respect the role of their counterpart. (citation omitted).

I firmly believe that this court should follow the general approach developed over the last thirty years by the federal courts in interpreting Federal Rule of Procedure 35. Alaska Rule of Civil Procedure 35 and the Federal Rule are identically worded. This court has repeatedly found federal authorities to be persuasive when interpreting a similarly worded Alaskan rule. (citations omitted).

As the federal court reasoned in *Dziwanoski v. Ocean Carriers Corp.* (1960), 26 F.R.D. 595:

> [I]t is desirable that once an examination be ordered, the procedure should be divested, as far as possible, of any adversary character. The physician is an 'officer of the court' performing a non-adversarial duty. The best possible attitude for both the party and the examiner is one of cooperation in a joint search for facts. The very presence of a lawyer for one side will inject a partisan role into what should be a wholly objective inquiry. The attorney has ample opportunity to challenge the use made of the information obtained

by the examination when the findings are presented as evidence in Court. *Id.* at 596–597.....

The court ignores the practical problems posed by its ruling. Will counsel be able to interrupt exams to seek rulings by the trial court judges on the propriety of doctors' questions or procedures? What about the exacerbated scheduling problems posed by counsel, clients, and doctors? Finally, what about the right of opposing counsel to also attend these examinations *or those of non-treating expert doctors hired by the plaintiff for trial* (emphasis added). The court dodges the critical question of defense counsel's role by stating that the issue was not raised in the trial court. By failing to consider the right of opposing counsel to also attend medical exams under Rule 35, the court provides a special tool to one side without considering its full impact on the carefully crafted balancing of interests set forth in the rule....

When viewed in its full implications, it becomes clear that this ruling threatens to turn medical exams into mini-depositions dominated by legal theatrics rather than medical fact finding. Counsel, who for the most part lack any special training in medical matters, will have unbridled discretion over the way a doctor examines the plaintiff. *This, of course, assumes that doctors will even agree to do these exams under such onerous conditions* (emphasis added)....

Finally, Svend [the plaintiff] contends that his right to counsel at a Rule 35 exam derives in part from his right to privacy. It seems likely that the ruling Svend seeks will ultimately intrude on a litigant's privacy more than the infrequent cases of improper medical exams the majority's new rule seeks to prevent. *In most cases, the presence of counsel, tape recorders or video cameras in the doctor's examination room will likely compound rather than minimize the intrusion on the privacy of the examinee....*

I cannot subscribe to a broad rule that assumes physicians will act unprofession-

ally when conducting medical examinations under Rule 35. The infrequent cases of abuse are better handled through the use of special protective orders granted by the trial court on a case by case basis. There are no allegations of improprieties, past or present, by the doctor involved in this case. Accordingly, I would affirm the trial court's order granting the exam with no requirement that it be tape recorded or that Svend's counsel be present.

*Id.* 768 P.2d at 1146–1150.

The only factors not touched upon by Justice Moore are those of time and expense. In the instant case, the complaint was filed in December of 1991. The motion for a T.R. 35 exam was made on March 5, 1992. We granted an interlocutory appeal on February 9, 1993, and it was not until July 26, 1993, that the case was ready to consider. Most likely, approximately four years will have passed from the time the complaint was filed—and almost a year and a half from when the T.R. 35 motion was filed—before a collateral discovery issue is decided. This time period does not necessarily comport with the policy behind modern discovery.

## II. OUR VIEW

■ We find persuasive both Justice Moore's conclusion and the federal position regarding a presumptive right to the presence of the defendant's attorney, either directly or by the use of a recording device or court reporter, during a T.R. 35 examination. The infrequent cases of potential abuse of such an examination are better handled through the use of special protective orders granted by the trial court on a case by case basis. A presumptive rule allowing counsel, third parties and/or re-

cording devices into medical exams interjects an adversarial, partisan atmosphere into what should otherwise be a wholly objective inquiry. The question of what, if any, conditions should be placed on a T.R. 35 examination is best left to the sound discretion of the trial court. However, we agree with those courts, such as the federal and state courts of Wisconsin, that have found that the party seeking a protective order bears the burden of establishing the need for such relief. *Whanger v. American Family Mut. Ins. Co., supra,* 207 N.W.2d at 79.

## III. CHAPLIN'S CASE

■ Chaplin's Motion for Protective Order states in pertinent part:

In support of this motion, [Chaplin] shows the court that:

4. Mr. Chaplin has sustained a head injury.[7] Doctors often take histories from patients. Unfortunately, in a few recent cases, plaintiffs' counsel has been involved with disputes between the T.R. 35 physician's recollection of what was said and the patient's recollection. Often, the history from the patient is extremely important in terms of the physician's testimony and/or cross examination of the physician.[8] Plaintiff's counsel simply wants to make sure that all parties have an accurate record of what is said. . . .

\* \* \* \* \* \*

6. A tape recording does not interfere with the exam and simply insures that an accurate record of what was said is made in the event of any later discrepancies. As Mr. Chaplin is a party, his statements can be used against. him as substantive evidence. *It is axiomatic that he*

---

7. The term "head injury" can have many meanings, e.g., a cut chin, a broken nose, a black eye, a fractured skull, a bump on the top of the head, etc.

8. At oral argument, it became clear that Chaplin's counsel was only concerned with the preservation of or an accurate account of the "history" claimed by the plaintiff during the T.R. 35 examination. When asked by the court why he did not simply submit a written history to both

the examining physician and defense counsel before the examination, counsel stated: "Honestly, I didn't think of that." As this court has stated, "[d]iscovery is designed to be self-executing with little, if any, supervision by the trial court." *Chrysler Corp. v. Reeves, supra.* We respectfully suggest that before counsel for both sides lock into a position, they consider what each wishes to accomplish and use their creative abilities to achieve those goals.

*should have the right to make an accurate record of what he said.*

R. 29–30 (emphasis added). There were no affidavits attached to this motion. It is clear that Chaplin claimed a presumptive right to record his T.R. 35 examination.

In response, Jacob's counsel filed a memorandum in opposition and attached an affidavit from Dr. Heller, which was neither notarized nor verified, in which Dr. Heller refused to examine Chaplin under such a condition and also attached a similar affidavit from Dr. Mitros, Dr. Heller's partner, stating that he agreed with Dr. Heller. R. 40–42, 52–53. Chaplin filed a reply to Jacob's memorandum which cited some of the case law discussed above and also quoted from Dr. Heller's deposition in another case which he claimed supported his need for a more accurate record than the doctor's notes. R. 43–51. Chaplin again failed to supply the trial court with any *evidence* supporting his arguments. We remind Chaplin's counsel that his opinion and citation to legal authority are not *evidence.*

There is no evidence that Chaplin has a communication problem or is cognitively impaired. Nor is there any evidence (or even any allegation) that Dr. Heller is biased or prejudiced against Chaplin. As we have stated, there is no presumptive right to have counsel present at—or to record—a T.R. 35 examination. The trial court's order is not supported by any evidence showing a need for such a condition at Chaplin's T.R. 35 examination. Therefore, we find the trial court abused its discretion and vacate its protective order issued on April 6, 1992.

Order vacated and cause remanded for further proceedings.

GARRARD, J., concurring.

CHEZEM, J., concurring in result with separate opinion.

CHEZEM, Judge, concurring in result.

I concur in result with the majority. I agree that the party requesting a protective order has the burden of establishing the need for the provisions requested.

I further agree that such provisions are best left to the discretion of the trial court.

Because the party seeking the protective order did not present any evidence to support the order, I agree that we vacate and remand to the trial court.